No. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

*In re* WARREN PETERSEN, Senator, President of the Arizona State Senate and BEN TOMA, Representative, Speaker of the Arizona House of Representatives,

*Petitioners,*

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA,

*Respondent,*

JANE DOE, by her next friends and parents Helen Doe and James Doe, and MEGAN ROE, by her next friends and parents Kate Roe and Robert Roe,

*Real Parties in Interest – Plaintiffs,*

and

THOMAS C. HORNE, in his official capacity as State Superintendent of Public Instruction, LAURA TOENJES, in her official capacity as Superintendent of the Kyrene School District, KYRENE SCHOOL DISTRICT, THE GREGORY SCHOOL, and the ARIZONA INTERSCHOLASTIC ASSOCIATION, INC.,

*Real Parties in Interest – Defendants.*

## PETITION FOR WRIT OF MANDAMUS TO THE UNITED
## STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

D. John Sauer
Justin D. Smith
Michael E. Talent
JAMES OTIS LAW GROUP, LLC
13321 N. Outer Forty Rd., Suite 300
St. Louis, Missouri 63017
(816) 678-2103
*Attorneys for Petitioners*

## <u>DISCLOSURE STATEMENT</u>

A disclosure statement pursuant to Federal Rule of Appellate Procedure 26.1 is not required, as Petitioners Petersen and Toma are government parties.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................ 1

STATEMENT ................................................................................. 3

   I.   The *Doe* Litigation and Intervention ............................................ 3

   II.  Discovery in the *Doe* Litigation ..................................................... 5

   III.   The District Court's Order Compelling Discovery ...................... 6

ARGUMENT ................................................................................... 7

   I.   The Legislative Leaders have no other adequate way to obtain the relief sought. .......................................................................... 9

   II.  The Legislative Leaders will suffer damage and prejudice that cannot be corrected on appeal. ..................................................... 10

   III.   The district court clearly erred as a matter of law ..................... 12

     A.  The district court clearly erred by overruling the *Morgan* doctrine. ............................................................................. 13

       i.   The district court clearly erred because it did not apply this Court's "extraordinary circumstances" test. .................................. 14

       ii.  The district court clearly erred by ruling the *Morgan* doctrine did not apply because of the Legislative Leaders' intervention. ... 15

     B.  The district court clearly erred by overruling the legislative privilege. ............................................................................ 18

       i.   The district court clearly erred by allowing discovery of legislative motives. ............................................................... 18

       ii.  The district court clearly erred by ruling the Legislative Leaders waived the legislative privilege by intervening ............... 23

   IV.   The Court's error is often repeated. ........................................... 29

   V.  New and important issues are at stake. ...................................... 29

CONCLUSION ............................................................................... 30

CERTIFICATE OF RELATED CASES ............................................ 32

CERTIFICATE OF COMPLIANCE ................................................. 33

CERTIFICATE OF SERVICE ......................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona,*
  881 F.2d 1486 (9th Cir. 1989) .............................................. 9, 10, 29, 30

*Arizona v. California,*
  283 U.S. 423 (1931) .......................................................................... 19

*Barnes v. Sea Hawaii Rafting, LLC,*
  889 F.3d 517 (9th Cir. 2018) ............................................................ 12

*Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.,*
  410 F.3d 1104 (9th Cir. 2005) .......................................................... 10

*Berger v. N.C. State Conf. of the NAACP,*
  597 U.S. 179 (2022) .......................................................................... 26

*Brown & Williamson Tobacco Corp. v. Williams,*
  62 F.3d 408 (D.C. Cir. 1995) ............................................................ 24

*Calder v. People of State of Michigan,*
  218 U.S. 591 (1910) .......................................................................... 19

*City of Las Vegas v. Foley,*
  747 F.2d 1294 (9th Cir. 1984) ........................................ 20, 21, 23, 29

*Coffin v. Coffin,*
  4 Mass. 1 (1808) ................................................................................ 11

*Eastland v. U. S. Servicemen's Fund,*
  421 U.S. 491 (1975) .......................................................................... 21

*Ex parte McCardle,*
  74 U.S. 506 (1868) ............................................................................ 19

*Fletcher v. Peck,*
  10 U.S. 87 (1810) .............................................................................. 18

*Hamilton v. Kentucky Distilleries & Warehouse Co.,*
  251 U.S. 146 (1919) .......................................................................... 18

*Hernandez v. Tanninen,*
  604 F.3d 1095 (9th Cir. 2010) .................................................... 7, 8, 9

*In re Clinton,*
  973 F.3d 106 (D.C. Cir. 2020) .......................................................... 16

*In re F.D.I.C.,*
  58 F.3d 1055 (5th Cir. 1995) ............................................................ 16

*In re Hubbard,*
  803 F.3d 1298 (11th Cir. 2015) ........................................................ 20

iii

*In re Kirkland,*
 75 F.4th 1030 (9th Cir. 2023)...................................... 8, 9, 10, 11, 12, 13

*In re N. Dakota Legislative Assembly,*
 70 F.4th 460 (8th Cir. 2023).................................................... 18, 20, 29

*In re Off. of the Utah Att'y Gen.,*
 56 F.4th 1254 (10th Cir. 2022)............................................... 13, 17, 29

*In re Paxton,*
 60 F.4th 252 (5th Cir. 2023)............................................................... 17

*In re Perez,*
 749 F.3d 849 (9th Cir. 2014) .......................................................... 7, 9

*In re Toma,*
 No. 23-70179, 2023 WL 8167206 (9th Cir. Nov. 24, 2023) ...... 23, 24, 30

*In re U.S. Dep't of Educ.,*
 25 F.4th 692 (9th Cir. 2022)...............8, 9, 10, 11, 12, 13, 14, 15, 17, 29

*In re Zermeno-Gomez,*
 868 F.3d 1048 (9th Cir. 2017) .......................................................... 15

*Karnoski v. Trump,*
 926 F.3d 1180 (9th Cir. 2019) ............................................................ 9

*La Union Del Pueblo Entero v. Abbott,*
 68 F.4th 228 (5th Cir. 2023)............................................................. 20

*La Union del Pueblo Entero v. Abbott,*
 93 F.4th 310 (5th Cir. 2024)....................................................... 20, 22

*Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency,*
 440 U.S. 391 (1979) ......................................................................... 19

*League of United Latin Am. Citizens v. Abbott,*
 No. EP-21-CV-00259, 2022 WL 2866673 (W.D. Tex. July 6, 2022).....14

*Lee v. City of Los Angeles,*
 908 F.3d 1175 (9th Cir. 2018) ...................................................... 20, 21

*McCray v. United States,*
 195 U.S. 27 (1904) ........................................................................... 19

*Palmer v. Thompson,*
 403 U.S. 217 (1971) ......................................................................... 23

*Pernell v. Fla. Bd. of Governors of State Univ.,*
 84 F.4th 1339 (11th Cir. 2023).................................................... 20, 29

*Perry v. Schwarzenegger,*
 591 F.3d 1147 (9th Cir. 2010) ................................. 7, 8, 9, 10, 11, 12, 30

*Senate Permanent Subcomm. on Investigations v. Ferrer,*
 856 F.3d 1080 (D.C. Cir. 2017)................................................ 24, 25, 28

iv

*Tenney v. Brandhove,*
   341 U.S. 367 (1951) ........................................................ 11, 19
*United States Football League v. National Football League,*
   842 F.2d 1335 (2d Cir. 1988) .............................................. 28
*United States v. Biaggi,*
   853 F.2d 89 (2d Cir. 1988) ................................................. 24
*United States v. Carrillo-Lopez,*
   68 F.4th 1133 (9th Cir. 2023) ....................................... 21, 22
*United States v. Des Moines Nav. & Ry. Co.,*
   142 U.S. 510 (1892) .......................................................... 19
*United States v. Helstoski,*
   442 U.S. 477 (1979) .............................. 23, 24, 25, 26
*United States v. Johnson,*
   383 U.S. 169 (1966) .......................................................... 18
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
   429 U.S. 252 (1977) .......................................................... 21

**Statutes**

A.R.S. § 12-1841 ............................................................... 4, 28
A.R.S. § 15-120.02 ................................................................. 3

**Other Authorities**

16 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND
   PROCEDURE § 3935.3 (2d ed. 2009) ....................................... 7
2 WORKS OF JAMES WILSON (James De Witt Andrews ed. 1896) ........... 11
S.B. 1165, 55th Leg., 2d Reg. Sess. (Ariz. 2022) ....................... 3

**Rules**

Ariz. House of Representatives Rule 4(K) ............................... 4
Ariz. State Senate Rule 2(N) ................................................. 4
Fed. R. Civ. P. 33 .................................................................. 5

**Constitutional Provisions**

Ariz. Const. art. IV, pt. 2 § 8 ............................................... 4
NEW HAMPSHIRE CONSTITUTION of 1784, pt. I, art. XXX .............. 11

v

## **INTRODUCTION**

The President of the Arizona State Senate and the Speaker of the Arizona House of Representatives (the "Legislative Leaders") seek a writ of mandamus to prevent their depositions and production of five documents protected by the legislative privilege. Every writ factor this Court considers favors the Legislative Leaders.

First, the Legislative Leaders have no other adequate way to obtain the relief sought because the district court's order compelling discovery is interlocutory and non-appealable.

Second, the Legislative Leaders will suffer damage and prejudice that cannot be corrected on appeal. Information disclosure cannot be undone, and the intrusion of a deposition is not correctable even if testimony is excluded at trial.

Third, the district court clearly erred as a matter of law by overruling the *Morgan* doctrine. The court did not apply this Court's "extraordinary circumstances" test for depositions of high-ranking officials, all three factors of which weigh heavily against allowing the depositions. The district court instead dismissed the *Morgan* doctrine

1

due to the Legislative Leaders' intervention, a decision that no other court appears to have reached.

The district court also clearly erred by overruling the legislative privilege. For more than two centuries, the Supreme Court, this Court, and other circuit courts have denied discovery of legislative motives, which the district court expressly allowed. The district court found the Legislative Leaders waived the legislative privilege by applying a standard directly conflicting with the Supreme Court's holding that, if the privilege can be waived, it must be by an "explicit and unequivocal renunciation."

Fourth, the district court's error is often repeated. Numerous circuits, including this Court, have granted writs of mandamus to reverse erroneous trial court decisions permitting depositions of high-ranking officials or discovery of legislative motives.

Fifth, allowing high-ranking legislators to be deposed about their motives because they intervened to defend state law implicates constitutional concerns involving the separation of powers.

This Court should issue a writ of mandamus.

## STATEMENT

### I.    The *Doe* Litigation and Intervention

In March 2022, the Arizona Legislature passed the Save Women's Sports Act to promote fairness, opportunity, and safety in girls' and women's sports.  *See* A.R.S. § 15-120.02; S.B. 1165, 55th Leg., 2d Reg. Sess. (Ariz. 2022), § 2.  The Act provides that only biological women and girls can play on female sports teams.  § 15-120.02(B).

In April 2023, Plaintiffs Jane Doe and Megan Roe ("Plaintiffs") filed a complaint claiming the Save Women's Sports Act violates the Equal Protection Clause, Title IX, the Americans with Disability Act, and Section 504 of the Rehabilitation Act.  Doc 1.  Plaintiffs did not allege discriminatory motives or factual issues relating to the Legislature in their Complaint, Motion for Preliminary Injunction, or intervention briefing.  *See* Docs. 1, 3, 35.

Plaintiffs named only one state official, the State Superintendent of Public Instruction, as a defendant.  *Id.* at ¶ 9.  Four days later, the Arizona Attorney General informed the State Superintendent that the Attorney General's Office was disqualified from representing the State Superintendent in the lawsuit.  Doc. 19-1.

3

President Warren Petersen and Speaker Ben Toma are the elected leaders of Arizona's legislative branch. The Arizona Constitution expressly provides that the Arizona Senate and House of Representatives shall each "choose its own officers" and "determine its own rules of procedure." Ariz. Const. art. IV, pt. 2 § 8. Pursuant to this constitutional authority, the Arizona Senate and House of Representatives have empowered their elected leaders to defend institutional interests on behalf of their respective legislative chambers. Ariz. State Senate Rule 2(N); Ariz. House of Representatives Rule 4(K). Arizona law also grants the President and Speaker "the right to be heard" and the right to "intervene as a party" in "any proceeding in which a state statute . . . is alleged to be unconstitutional." A.R.S. § 12-1841(A), (D).

After the Arizona Attorney General declined to defend the law challenged by Plaintiffs, the Legislative Leaders sought intervention by exercising the authority granted by chamber rules and state law to defend institutional interests and the constitutionality of a state law. Doc. 19. The district court initially granted "permissive intervention on a limited basis to allow the Legislators to present argument and evidence in opposition to Plaintiffs' pending Motion for Preliminary Injunction."

4

Doc. 79, at 1.  The court later "allow[ed] Intervenor Legislator Defendants to represent their interests in the entirety of this action" and granted them party status.  Doc. 142, at 1; *see also* Doc. 111, at 2.

## II.    Discovery in the *Doe* Litigation

*Written discovery*.  Contrary to the claim they have "actively participate[d] in this litigation while avoiding the burden of discovery regarding their legislative activities," Doc. 211, at 6 (quotation omitted), the Legislative Leaders thoroughly responded to interrogatories, requests for production, and requests for admission propounded by Plaintiffs.  *See* Doc. 198-1, Exs. B, C; Doc. 197.  Plaintiffs did not ask the district court to address any issues relating to the Legislative Leaders' responses to interrogatories or requests for admission.  *See* Doc. 191.  In fact, Plaintiffs "do not presently believe they need" any further written discovery from the Legislative Leaders.  Doc. 191-2, Ex. 9, at 2.  Plaintiffs have not used 16 of their interrogatories to the Legislative Leaders. *Compare* Doc. 191-2, Ex. 3 *with* Fed. R. Civ. P. 33(a)(1).

*Document discovery*.  The Legislative Leaders produced more than 400 documents and 1,100 pages of records.  Doc. 198-1, ¶ 2.  The Legislative Leaders withheld as privileged only five documents—totaling

5

just 14 pages. *Id.* at ¶ 7. Other legislators, who are not parties in this litigation, created all five documents. *See* Doc. 191-2, Ex. 5, Doc. #3, #6, #14, #15, #18.

*Depositions.* Plaintiffs have not taken any depositions in this case. Doc. 198-1, ¶ 14. Plaintiffs informed all parties that they did not "plan to take any depositions of any fact witnesses from any of the Defendants in this litigation." Doc. 191-2, Ex. 9, at 3. No party identified the Legislative Leaders as witnesses in initial disclosures. Doc. 198-1, ¶ 13. On what was at the time the last day to serve discovery requests, Plaintiffs demanded to depose President Petersen and Speaker Toma. Doc. 191-2, Ex. 9, at 3-4. Exploring legislative motives underlying the challenged law is Plaintiffs' only basis for the depositions. Doc. 191, at 9; Doc 211, at 5.

## III.  The District Court's Order Compelling Discovery

The district court granted Plaintiffs' motion to compel the Legislative Leaders to produce all five withheld documents and sit for deposition. Doc. 211, at 10. The district court concluded that information of legislative motive is relevant in Equal Protection cases. *Id.* at 4-5. The court determined that legislative privilege is a qualified privilege that

6

the Legislative Leaders waived. *Id.* at 6-8. Finally, for purposes of this petition, the court ruled that the *Morgan* doctrine did not apply because the Legislative Leaders voluntarily joined the litigation. *Id.* at 9.

The Legislative Leaders asked the district court to stay its decision pending appellate review, or in the alternative, to grant an administrative stay to allow the Legislative Leaders to seek relief from this Court. Doc. 212. The district court denied the motion. Doc. 218.

## ARGUMENT

This Court has "authority to issue a writ of mandamus under the 'All Writs Act,' 28 U.S.C. § 1651." *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010) (citation omitted). "Mandamus is appropriate to review discovery orders when particularly important interests are at stake." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156–57 (9th Cir. 2010) (quoting 16 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3935.3 (2d ed. 2009)). The Ninth Circuit may "rely on mandamus to resolve new questions that otherwise might elude appellate review or to protect important or clear claims of privilege." *Id.* at 1157 (citing cases) (internal quotations omitted); *see also In re Perez*, 749 F.3d 849, 854 (9th Cir. 2014). This petition presents important issues

7

of legislative privilege and depositions of high-ranking legislators, which implicate important interests relating to the separation of powers and the functioning of the legislative branch.

This Court considers the *Bauman* factors before granting a writ:

> (1) the petitioner has no other adequate way to obtain the relief sought; (2) the petitioner will suffer damage or prejudice that cannot be corrected on appeal; (3) the district court clearly erred as a matter of law; (4) the error is often repeated or shows the district court's persistent disregard for the federal rules; and (5) there are new and important issues at stake.

*In re U.S. Dep't of Educ.*, 25 F.4th 692, 697–98 (9th Cir. 2022) (citations omitted).

This Court weighs these five factors "holistically" and not mechanically. *In re Kirkland*, 75 F.4th 1030, 1040 (9th Cir. 2023). "Not every factor need be present at once." *Perry*, 591 F.3d at 1156. This Court may issue a writ "when fewer than five [factors], or only one, are present." *In re Kirkland*, 75 F.4th at 1041 (internal citation omitted). "In fact, rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable." *Hernandez*, 604 F.3d at 1099 (citation omitted).

8

This Court should issue a writ of mandamus because all *Bauman* factors weigh heavily in the Legislative Leaders' favor.

## I.     The Legislative Leaders have no other adequate way to obtain the relief sought.

A discovery order is "interlocutory and non-appealable under 28 U.S.C. §§ 1292(a)(1) and 1292(b)." *Perry*, 591 F.3d at 1157 (citation omitted); *see also Hernandez*, 604 F.3d at 1101. This Court has not "required a litigant to incur a sanction, such as contempt, before it may seek mandamus relief." *In re Kirkland*, 75 F.4th at 1048 (cleaned up). This is especially true for high-ranking government officials. *See In re U.S. Dep't of Educ.*, 25 F.4th at 705; *In re Perez*, 749 F.3d at 855. And the "unique features" of the legislative privilege and *Morgan* doctrine "suggest that there is no other adequate means of relief." *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019) (granting writ involving presidential communications and deliberative process privileges).

The Legislative Leaders thus satisfy the first *Bauman* factor because they "lack[] an alternative avenue for relief." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1488 (9th Cir. 1989).

9

## II.   The Legislative Leaders will suffer damage and prejudice that cannot be corrected on appeal.

The Legislative Leaders also satisfy the second factor because "once the information is out of the bag, you can't stuff it back in." *Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104, 1108 (9th Cir. 2005). The "inquiry under the second *Bauman* factor is closely related to the first." *In re Kirkland*, 75 F.4th at 1051.

1.   The Legislative Leaders will suffer damage and prejudice from "the disclosure itself." *Perry*, 591 F.3d at 1158.  The district court's order requires the Legislative Leaders to produce documents that they withheld as privileged.  Doc. 211, at 10.  This Court has repeatedly found discovery orders compelling production of privileged communications caused injury that could not be corrected by appeal.  *See Perry*, 591 F.3d at 1157-58; *Barton*, 410 F.3d at 1109; *Admiral Ins. Co.*, 881 F.2d at 1491. This is because "the disclosure cannot be undone, by appeal or otherwise." *Barton*, 410 F.3d at 1109.

2.   The Legislative Leaders also will suffer damage and prejudice from "the intrusion of the deposition itself." *In re U.S. Dep't of Educ.*, 25 F.4th at 705.  The district court's order requires the Legislative Leaders to submit to deposition.  Doc. 211, at 10.  This "harm is not correctable on

10

appeal, even if [the] testimony is excluded at trial." *In re U.S. Dep't of Educ.*, 25 F.4th at 705; *see also In re Kirkland*, 75 F.4th at 1051.

3.  The Legislative Leaders will suffer damage or prejudice from "the substantial costs imposed on the public interest." *Perry*, 591 F.3d at 1158.  The legislative privilege exists "'to enable and encourage a representative of the public to discharge his public trust with firmness and success.'" *Tenney v. Brandhove*, 341 U.S. 367, 373 (1951) (quoting 2 WORKS OF JAMES WILSON 38 (James De Witt Andrews ed. 1896)).  State protections for legislative speech and debate were "'to support the rights of the people,'" *id.* at 373-74 (quoting *Coffin v. Coffin*, 4 Mass. 1, 27 (1808)), and were "'essential'" to them, *id.* at 374 (quoting NEW HAMPSHIRE CONSTITUTION of 1784, pt. I, art. XXX).  The "potential chilling effect" from forcing the Legislative Leaders' disclosure and depositions "is therefore substantial, even if the district court's error were eventually corrected on appeal from final judgment." *Perry*, 591 F.3d at 1158.

The Legislative Leaders will suffer damage and prejudice that cannot be corrected on appeal from the disclosure, the intrusion of the depositions, and the substantial costs imposed on the public interest.  The Legislative Leaders satisfy the second *Bauman* factor.

11

## III.   The district court clearly erred as a matter of law.

This Court develops the "firm conviction" necessary to determine a clear error of law "when [this] court has already directly addressed the question at issue or when similar cases from [this] court, cases from the Supreme Court, cases from other circuits, the Constitution, or statutory language definitively show us that a mistake has been committed." *In re U.S. Dep't of Educ.*, 25 F.4th at 698 (internal quotation omitted). However, the "necessary 'clear error' factor does not require that the issue be one as to which there is established precedent." *Perry*, 591 F.3d at 1159.  When this Court has not "squarely addressed an issue," it can find the district court's ruling clearly erroneous "if contrary to an unbroken string of authorities from other jurisdictions." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (cleaned up).  And "where a petition for mandamus raises an important issue of first impression, ... a petitioner need show only ordinary (as opposed to clear) error." *In re Kirkland*, 75 F.4th at 1041–42 (cleaned up).

12

The Legislative Leaders are likely to prevail in showing clear error in overruling the *Morgan* doctrine and the legislative privilege.[1]

## A. The district court clearly erred by overruling the *Morgan* doctrine.

The district court should have applied the *Morgan* doctrine to deny Plaintiffs' deposition requests. Under this doctrine, high-ranking government officials may not be deposed unless "extraordinary circumstances" exist. *In re U.S. Dep't of Educ.*, 25 F.4th at 701. "Although district courts have occasionally ordered such depositions, circuit courts have issued writs of mandamus to stop them when asked to, generally finding that the circumstances before them were not extraordinary." *Id.* (citing cases); *see also In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254, 1264 (10th Cir. 2022).

The *Morgan* doctrine applies to high-ranking legislators under the clear reasoning of *In re U.S. Department of Education* and an unbroken string of authority from other jurisdictions. Indeed, the district court did not dispute the *Morgan* doctrine's application to high-ranking legislators.

---

[1] Because the Legislative Leaders can show clear error, this Court will not need to address the difference between "clear error" and "ordinary error." *In re Kirkland*, 75 F.4th at 1042. For the reasons that the decision is "clear error," *a fortiori*, it is "ordinary error."

13

Doc. 211, at 9 (citing *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259, 2022 WL 2866673, at *2 (W.D. Tex. July 6, 2022)).  The *League of United Latin American Citizens* decision identified four other federal courts that "applied the *Morgan* framework to deposition subpoenas targeted at legislative officials." *Id.* at *2 (citing cases).  No case has been found in which the *Morgan* doctrine has been rejected for high-ranking legislators. *See id.* ("The United States has not directed the Court to any cases reaching the contrary conclusion; nor has the Court's independent research uncovered any such authority.").

> i.  **The district court clearly erred because it did not apply this Court's "extraordinary circumstances" test.**

To establish extraordinary circumstances to take a high-ranking government official's deposition, this Court requires Plaintiffs to demonstrate, and the district court to find, "(1) a showing of agency bad faith; (2) the information sought from the [high-ranking official] is essential to the case; and (3) the information sought from the [high-ranking official] cannot be obtained in any other way." *In re U.S. Dep't of Educ.*, 25 F.4th at 702.  All three factors must be satisfied. *Id.*

14

None are present here. Indeed, the district court ignored them. *See* Doc. 211. In fact, the district court did not even cite to the *In re U.S. Department of Education* decision. *See id.* This Court's decision "constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so." *In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017). Had the district court examined the factors, the district court would have had to deny Plaintiffs' deposition requests because Plaintiffs failed to establish any of the three factors. *See* Doc. 198, at 14-15.

The district court clearly erred by ordering depositions without analyzing the "extraordinary circumstances" test, all factors of which weigh heavily against allowing the depositions. *In re U.S. Dep't of Educ.*, 25 F.4th at 703-05; *see also In re Zermeno-Gomez*, 868 F.3d at 1053.

> ii. **The district court clearly erred by ruling the *Morgan* doctrine did not apply because of the Legislative Leaders' intervention.**

In three unsupported sentences, the district court concluded the *Morgan* doctrine did not apply because the Legislative Leaders "voluntarily joined this lawsuit." Doc. 211, at 9. The district court reasoned that "[t]here is no need to insulate the Intervenor-Defendants

15

from the distraction of this lawsuit because they requested to participate in the action." *Id.* According to the district court, "[t]he purposes underpinning the *Morgan* doctrine simply do not apply when state legislators intentionally insert themselves as a party to the litigation." *Id.* This was the sole basis for the rejection of the *Morgan* doctrine.

The district court did not cite any authority to support its conclusions. *See id.* Indeed, no case has been found in which intervention affected the *Morgan* doctrine's application. To the contrary, a high-ranking official who intervened in a case successfully blocked a deposition. *See In re Clinton*, 973 F.3d 106, 109 (D.C. Cir. 2020) (writ of mandamus granted to intervenor former Secretary of State) (cited approvingly by *In re U.S. Dep't of Educ.*, 25 F.4th at 701).

That is true even when the government officials are plaintiffs. Like the Legislative Leaders, government plaintiffs voluntarily act to protect their interests, including by bringing suits. But at least one circuit has "reject[ed] the proposition that an administrative agency subjects its high-level officials to discovery when it brings a declaratory judgment action intended to give effect to an agency decision." *In re F.D.I.C.*, 58 F.3d 1055, 1062 (5th Cir. 1995). The Legislative Leaders are similarly

16

situated to other government defendants because they are a "party in the litigation." Doc. 211, at 2. Many circuit courts, including this Court, have issued writs of mandamus based on the *Morgan* doctrine to prevent depositions of high-ranking officials of party defendants. *See In re Paxton*, 60 F.4th 252, 259 (5th Cir. 2023); *In re Off. of the Utah Att'y Gen.*, 56 F.4th at 1264; *In re U.S. Dep't of Educ.*, 25 F.4th at 706.

The purposes underlying the *Morgan* doctrine apply to high-ranking legislators whether they are plaintiffs, defendants, or intervenors. The separation of powers rationale for the *Morgan* doctrine, *In re U.S. Dep't of Educ.*, 25 F.4th at 699, applies equally to the legislative branch, *see Tenney*, 341 U.S. at 378. High-ranking legislators also should not be distracted by preparing for and sitting for depositions. *See In re U.S. Dep't of Educ.*, 25 F.4th at 700, 705. And like cabinet officials, deposition threats could dissuade legislators from seeking legislative leadership or zealously defending legislative interests. *See id.* at 705.

The district court thus clearly erred by ruling the *Morgan* doctrine did not apply because the Legislative Leaders intervened.

**B.    The district court clearly erred by overruling the legislative privilege.**

The district court should have applied the legislative privilege to deny Plaintiffs' requests for depositions and documents.  "Since the Glorious Revolution in Britain, and throughout United States history, the [legislative] privilege has been recognized as an important protection of the independence and integrity of the legislature." *United States v. Johnson*, 383 U.S. 169, 178 (1966) (internal citations omitted).  The legislative privilege maintains confidentiality within the legislature and protects the legislative process itself.  *See In re N. Dakota Legislative Assembly*, 70 F.4th 460, 464 (8th Cir. 2023).

**i.    The district court clearly erred by allowing discovery of legislative motives.**

"No principle of our constitutional law is more firmly established than that this court may not, in passing upon the validity of a statute, inquire into the motives of Congress." *Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146, 161 (1919).  Chief Justice John Marshall first rejected judicial inquiry into legislative motives.  *See Fletcher v. Peck*, 10 U.S. 87, 131 (1810).  *Fletcher*'s holding, "that it was not consonant with our scheme of government for a court to inquire into the

18

motives of legislators, has remained unquestioned." *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 405 (1979) (quoting *Tenney*, 341 U.S. at 377); *see also McCray v. United States*, 195 U.S. 27, 59 (1904) ("It being thus demonstrated that the motive or purpose of Congress in adopting the acts in question may not be inquired into . . . ."); *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("We are not at liberty to inquire into the motives of the legislature.").

Inquiry into state legislator motives is specifically prohibited. The Court has been clear: "[N]o inquiry may be made concerning the motives or wisdom of a state Legislature acting within its proper powers." *Arizona v. California*, 283 U.S. 423, 455 n.7 (1931) (citing cases). The Court has "never allowed" inquiry into state legislator motives. *United States v. Des Moines Nav. & Ry. Co.*, 142 U.S. 510, 544–45 (1892) (rejecting challenge to Iowa law based on alleged improper legislative motives). The Court does not inquire into state legislators' "knowledge, negligence, methods, or motives" for legislation. *Calder v. People of State of Michigan*, 218 U.S. 591, 598 (1910) (rejecting challenge to Michigan law based on alleged improper legislative motives). "No inquiry," *Arizona*, 283 U.S. at 455 n.7, means no discovery.

19

*Fletcher* and its progeny bar discovery into legislative motives, which this Court confirmed by blocking discovery sought from legislators. *See Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1296, 1299 (9th Cir. 1984). Other circuits also have blocked discovery from legislators. *See La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 325 (5th Cir. 2024); *In re N. Dakota Legislative Assembly*, 70 F.4th at 463; *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1345 (11th Cir. 2023); *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 240 (5th Cir. 2023); *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015). "Allowing discovery of legislative motives" would "create a major departure from the precedent rejecting the use of legislative motives . . . ." *City of Las Vegas*, 747 F.2d at 1298.

The district court clearly erred by ordering discovery of legislative motives through depositions and production of privileged documents. Doc. 211, 10. Contrary to the district court cases the order below cited, *id.* at 4, inquiries into legislative motives are prohibited even when, like here, a party alleges discrimination violated the Equal Protection Clause. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252,

20

268 (1977); *Tenney*, 341 U.S. at 377. Applying this Supreme Court precedent to an Equal Protection case, this Court rejected depositions of legislators about their motives. *Lee*, 908 F.3d at 1187-88; *see also City of Las Vegas*, 747 F.2d at 1298.

To justify its "substantial intrusion" into legislative motives, *Lee*, 908 F.3d at 1187, the district court reasoned that "[t]his discovery may shed light on whether the Arizona legislature acted with a constitutionally permissible purpose." Doc. 211, at 5. But this Court already has rejected this basis for discovery. *Lee*, 908 F.3d at 1187-88. Claims alleging discrimination or other constitutional violations that "directly implicate[] the government's intent" are not "'extraordinary instances' that might justify an exception to the [legislative] privilege."[2] *Id.* at 1188 (quoting *Vill. Of Arlington Heights*, 429 U.S. at 268); *see also Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 508–09 (1975) ("If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the [Speech or Debate] Clause, then the Clause simply would not provide the protection

---

[2] Plaintiffs are not left without factual avenues to support their claims. *See United States v. Carrillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023) (identifying legislative intent factors).

21

historically undergirding it."). Although the district court referred to the legislative privilege as qualified, Doc. 211, at 6, the Fifth Circuit recently held that the legislative privilege does not yield when, like here, a private plaintiff alleges a "mere constitutional or statutory claim" to vindicate his or her own rights. *La Union del Pueblo Entero*, 93 F.4th at 324-25.

*Carrillo-Lopez*'s probative value discussion does not imply that legislative motives are discoverable or relevant. *Contra* Doc. 211, at 5. *Carrillo-Lopez* did not involve legislative discovery, but instead warned against relying on "contemporary statements" and "speech[es]"—*i.e.*, public comments—by individual legislators at the time of a law's passage. *Carrillo-Lopez*, 68 F.4th at 1140. Post-passage discovery of individual legislator's motives is neither allowed, *supra*, nor relevant. "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *O'Brien*, 391 U.S. at 383. In fact, "no case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it." *Palmer v.*

22

*Thompson*, 403 U.S. 217, 224 (1971).  Discovery is not relevant if the court is not allowed to order it or rely upon it.[3]

The district court's decision allowing discovery of legislative motives is "a major departure from the precedent rejecting the use of legislative motives." *City of Las Vegas*, 747 F.2d at 1298.  The district court thus clearly erred by granting discovery of legislative motives.

> ii.   **The district court clearly erred by ruling the Legislative Leaders waived the legislative privilege by intervening.**

When it comes to the legislative privilege, "[t]he ordinary rules for determining the appropriate standard of waiver do not apply in this setting." *United States v. Helstoski*, 442 U.S. 477, 491 (1979).  The Supreme Court has not decided that an individual legislator may even waive the legislative privilege. *See id.*  But assuming it could be waived, the Court held that "waiver can be found only after explicit and unequivocal renunciation of the protection." *Id.*

---

[3] Unlike here, a district court order in a different case did not explicitly rule on relevance or the ability to probe legislative motives. *In re Toma*, No. 23-70179, 2023 WL 8167206, at *1 (9th Cir. Nov. 24, 2023).  The other case also did not involve arguments about the *Morgan* doctrine. *See id.*

23

"Explicit and unequivocal renunciation" is a high bar.  In *Helstoski*, the Court ruled that a legislator had not waived his privilege even though he voluntarily testified eight times to a grand jury and produced documents before he asserted the legislative privilege.  *Id.* at 482. Following *Helstoski*, circuit courts in both civil and criminal cases have rejected legislative privilege waiver arguments.  *See, e.g., Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086-87 (D.C. Cir. 2017) (filing lawsuit not waiver); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 421 n.11 (D.C. Cir. 1995) (radio interview not waiver); *United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988) (trial testimony not waiver).

The district court clearly erred because it determined that "[a] waiver of legislative privilege need not be explicit or unequivocal."  Doc. 211, at 6.  This ruling directly conflicts with the Supreme Court's decision in *Helstoski* that waiver of the legislative privilege must be "explicit and unequivocal."[4]

_____

[4] That distinguishes this case from *In re Toma*, where it does not appear the standard set out in *Helstoski* was raised or analyzed.  *See* 2023 WL 8167206, at *1.

24

Though required by *Helstoski*, the district court did not identify any "explicit or unequivocal renunciation" of the legislative privilege by the Legislative Leaders. Doc. 211, at 6-8. Rather, the district court's analysis centered on the Legislative Leaders' act of intervention. *See id.*

Voluntarily participating in a judicial action, such as by intervention, is not an "explicit and unequivocal renunciation" of legislative immunity. *See Senate Permanent Subcomm. on Investigations*, 856 F.3d at 1086-87. In an action initiated by a legislative subcommittee, a private party pointed to the lawsuit's filing to argue that "the Subcommittee necessarily accepted an implicit restriction on the Speech or Debate Clause by seeking to enlist the judiciary's assistance in enforcing its subpoena." *Id.* at 1087. This "argument lacks merit," ruled the D.C. Circuit. *Id.* The court reasoned that the subcommittee had not "invite[d] the courts' interference with constitutionally protected legislative activity." *Id.* Similarly, a legislator's voluntary participation before a grand jury on multiple occasions did not waive his legislative privilege. *See Helstoski*, 442 U.S. at 482. Because privileges are always asserted in litigation, the mere fact of engaging in litigation does not raise a plausible inference of waiving any privilege, and certainly not an

25

explicit and unequivocal renunciation of the privilege. A plaintiff does not waive attorney-client privilege by filing a lawsuit, and a legislator does not waive legislative privilege by intervening in a lawsuit.

The district court's order penalizes the legislative branch for defending its interests.[5] *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022) ("States possess a legitimate interest in the continued enforcement of their own statutes.") (cleaned up). No court decision has been found in which intervention by an executive branch actor—for example, the United States Department of Justice, a state attorney general, a governor, or a government agency—waived the executive privilege or deliberative process privilege. No court decision has been found in which intervention or appellate participation by a judge waived judicial immunity or privilege. The legislative branch is not a lesser branch. *See Helstoski*, 442 U.S. at 491 (the Speech or Debate Clause "preserve[s] the constitutional structure of separate, coequal, and

---

[5] The district court should not have ignored the heightened interest the Legislative Leaders possessed to defend state law after the Attorney General disqualified her office. Doc. 211, at 7. That the Attorney General delegated the law's defense to a different statewide official who took various actions after the Legislative Leaders sought intervention "is of no moment." *Id.* at 7-8.

26

independent branches of government.  The English and American history of the privilege suggests that any lesser standard would risk intrusion by the Executive and the Judiciary into the sphere of protected legislative activities.").

The Legislative Leaders also did not make an "explicit and unequivocal renunciation" of legislative privilege by "putting their intent at issue." Doc. 211, at 6.  First, the Legislative Leaders did not put their intent at issue, as the district court could only point to arguments based on the statute and public legislative findings.  *Id.* at 7.  Second, the Legislative Leaders' intent was not already at issue because Plaintiffs had not alleged discriminatory intent at the time of intervention, an inconvenient fact the district court dismissed as "irrelevant."  *Id.* at 8. Third and finally, the district court determined legislative purpose and motive always are at issue in an Equal Protection claim involving intermediate scrutiny.  *Id.*  None of the cited cases support such a broad proposition, which runs counter to numerous decisions by the Supreme Court and this Court. *See* Section III.B.i, *supra*.  And none of these issues, even viewed in the light most favorable to the district court, contain an "explicit and unequivocal renunciation" of the legislative privilege.

27

The Arizona law permitting the Legislative Leaders' intervention also does not contain an "explicit and unequivocal renunciation" of legislative privilege. Nothing in A.R.S. § 12-1841 "provides that the [Arizona legislature] forfeits its constitutional protections by seeking" intervention. *Senate Permanent Subcomm. on Investigations*, 856 F.3d at 1087. Statutory language confirming the Legislative Leaders have discretion to not intervene, Doc. 211, at 7, protects them from mandatory intervention and does not "explicitly and unequivocally renounce" their legislative privilege when they choose to exercise their right to intervene.

The Legislative Leaders retain their legislative privilege when they defend institutional interests and state law. The district court clearly erred by ruling the Legislative Leaders waived the legislative privilege by intervening.[6]

The Legislative Leaders thus satisfy the third *Bauman* factor.

---

[6] The Legislative Leaders also did not waive the legislative privilege of other legislators, who created all of the documents at issue. *See* Doc. 191-2, Ex. 7, at 13. The legislative privilege "cannot be waived by another member." *United States Football League v. National Football League,* 842 F.2d 1335, 1374–75 (2d Cir. 1988) (applying the legislative privilege to prevent a senator testifying about information he learned from other members of Congress). The district court never addressed how the Legislative Leaders could waive the legislative privilege for other legislators.

28

## IV.  The Court's error is often repeated.

The fourth factor, the error is often repeated, is "rarely, if ever, present at the same time" as the fifth factor. *Admiral Ins. Co.*, 881 F.2d at 1491.  But the district court's multiple clear errors discussed above present both often-repeated issues and new and important issues. Numerous circuits, including this Circuit, have granted writs of mandamus to reverse erroneous decisions permitting depositions of high-ranking officials. *See In re U.S. Dep't of Educ.*, 25 F.4th at 701 (citing decisions by six circuits); *In re Off. of the Utah Att'y Gen.*, 56 F.4th at 1264.  Numerous circuits, including this Circuit, have granted writs of mandamus to reverse erroneous decisions permitting discovery of legislative motives.  *See, e.g.*, *City of Las Vegas*, 747 F.2d at 1298; *In re N. Dakota Legislative Assembly*, 70 F.4th at 463; *see also Pernell*, 84 F.4th at 1345 (citing cases).  The Legislative Leaders thus satisfy the fourth *Bauman* factor.

## V.  New and important issues are at stake.

The fifth factor, for new and important issues, is present with "an important issue implicating constitutional concerns." *In re U.S. Dep't of Educ.*, 25 F.4th at 705-06.  Allowing high-ranking legislators to be

29

deposed about their motives because they intervened to defend state law implicates the separation of powers on multiple levels. This precedent will chill legislators both when passing legislation and when considering whether to defend it.

The fifth factor is also present when there is a significant question of first impression. *Perry*, 591 F.3d at 1158. The district court cited no authority, and none has been found, holding that the *Morgan* doctrine is waived by voluntarily participating in litigation. *Cf. Admiral Ins. Co.*, 881 F.2d at 1491 ("No circuit has heretofore recognized an exception to the attorney-client privilege based on a party's inability to obtain information from an unprivileged source."). As case law—"and the very existence of the fifth *Bauman* factor, whether the issue presented is one of first impression—illustrate, the necessary 'clear error' factor does not require that the issue be one as to which there is established precedent." *Perry*, 591 F.3d at 1159.

The Legislative Leaders thus satisfy the fifth *Bauman* factor.

## **CONCLUSION**

The Legislative Leaders respectfully request that this Court issue a writ of mandamus.

30

Dated: July 16, 2024         Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

*/s/ Justin D. Smith*
D. John Sauer
Justin D. Smith
Michael E. Talent
13321 North Outer Forty Road
Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com

*Attorneys for Petitioners President*
*Petersen and Speaker Toma*

31

## <u>CERTIFICATE OF RELATED CASES</u>

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

The undersigned attorney states the following:

[ ]    I am unaware of any related cases currently pending in this court.

[ ]    I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[**x**]    I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*Doe v. Horne*, No. 23-16026 c/w No. 23-16030; *Doe v. Horne*, No. 23-3188. The present Petition and these cases arise out of the same case in the district court.

*/s/ Justin D. Smith*
Justin D. Smith
July 16, 2024

32

## CERTIFICATE OF COMPLIANCE

I am the attorney for Petitioners. This brief contains 5,921 words, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief (select only one):

[**x**] complies with the word limit of FRAP 21(d) and page limit of Cir. R. 21-2(c).

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

*/s/ Justin D. Smith*
Justin D. Smith
July 16, 2024

33

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2024, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system. Service has been accomplished via email to the following counsel:

Counsel for Real-Parties-in-Interest-Plaintiffs:

Colin M. Proksel cproksel@omlaw.com
Amy Zimmerman azimmerman@debevoise.com
Justin R. Rassi jrassi@debevoise.com
Jyotin Hamid jhamid@debevoise.com
Amy E. Whelan awhelan@nclrights.org
Rachel Berg rberg@nclrights.org

Counsel for Real-Parties-in-Interest-Defendants:

*For Defendant Horne:*
Dennis Wilenchik diw@wb-law.com
McKay Worthington mckayw@wb-law.com
Maria Syms maria.syms@azed.gov

*For Defendant Toenjes and Kyrene School District:*
Jordan Ellel jellel@tuhsd.k12.az.us

*For Defendant Gregory School:*
David Potts dpotts@jshfirm.com
Ashley E. Caballero-Daltrey adaltrey@jshfirm.com
Lisa Smith lasmith@dmyl.com

*For Defendant AIA:*
Kristian E. Nelson kristian.nelson@lewisbrisbois.com

The district court will be provided with a copy of this petition for writ of mandamus pursuant to Federal Rule of Appellate Procedure 21(a).

*/s/ Justin D. Smith*
Justin D. Smith

34

No. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

*In re* WARREN PETERSEN, Senator, President of the Arizona State Senate and BEN TOMA, Representative, Speaker of the Arizona House of Representatives,

*Petitioners,*

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA,

*Respondent,*

JANE DOE, by her next friends and parents Helen Doe and James Doe, and MEGAN ROE, by her next friends and parents Kate Roe and Robert Roe,

*Real Parties in Interest – Plaintiffs,*

and

THOMAS C. HORNE, in his official capacity as State Superintendent of Public Instruction, LAURA TOENJES, in her official capacity as Superintendent of the Kyrene School District, KYRENE SCHOOL DISTRICT, THE GREGORY SCHOOL, and the ARIZONA INTERSCHOLASTIC ASSOCIATION, INC.,

*Real Parties in Interest – Defendants.*

## ADDENDUM TO PETITION FOR WRIT OF MANDAMUS

D. John Sauer
Justin D. Smith
Michael E. Talent
JAMES OTIS LAW GROUP, LLC
13321 N. Outer Forty Rd., Suite 300
St. Louis, Missouri 63017
(816) 678-2103
*Attorneys for Petitioners*

## <u>TABLE OF CONTENTS</u>

Order on Motion to Compel (June 20, 2024), Doc. 211............................1

Declaration of Justin D. Smith in Opposition to Plaintiffs' Motion
    to Compel Discovery (March 18, 2024), Doc. 198-1 .....................15

Order Denying Motion to Stay (July 12, 2024), Doc. 218......................60

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Doe, et al., | No. CV-23-00185-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Thomas C Horne, et al., | |
| Defendants. | |

Pending before the Court are Plaintiffs' Motion to Compel Discovery as to Intervenor-Defendants (Doc. 191) and Motion for a Protective Order (Doc. 196).[1] Both motions are fully briefed. (Doc. 191, 198, 200, 196, 199, 201.) For the following reasons, the Court will grant the Motion to Compel and grant in part and deny in part the Motion for Protective Order.

## I.     BACKGROUND

The Plaintiffs filed suit on April 17, 2023, alleging that A.R.S. § 15-120.02, a law that prohibits transgender girls from competing on girls' school sports teams, violates their rights under the Equal Protection Clause, Title IX, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act (RA). (Doc. 1.) Plaintiffs named five defendants in their Complaint: (1) Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction; (2) Laura Toenjes, in her official capacity as

---

[1] The Plaintiffs also filed a Second Motion for Extension of Time to Complete Discovery. (Doc. 205.) The Court granted this request during oral argument on May 7, 2024. (Doc. 207.)

1    Superintendent of the Kyrene School District; (3) the Kyrene School District; (4) the

2    Gregory School; and (5) the Arizona Interscholastic Association (AIA).[2] (*Id.*)

3         Before any defendant made an appearance, Senator Warren Peterson, President of

4    the Arizona State Senate, and Representative Ben Toma, Speaker of the Arizona House of

5    Representatives, filed a Motion to Intervene pursuant to Rule 24 of the Federal Rules of

6    Civil Procedure. (Doc. 19.) The Court initially granted President Peterson and Speaker

7    Toma limited intervention and allowed them to present arguments and evidence in

8    opposition to the Plaintiffs' Motion for Preliminary Injunction. (Doc. 79.) Later, the Court

9    amended its decision and allowed President Peterson and Speaker Toma to participate fully

10   as a party in the litigation. (Doc. 111, 142.)

11        The Intervenor-Defendants have fully participated in this action. On September 12,

12   2023, in lieu of an answer, Intervenor-Defendants filed a motion to dismiss the complaint

13   for failure to state a claim. (Doc. 146 at 10.) Since October 2023, the Intervenor-Defendants

14   have actively participated in discovery. On October 30, 2023, the Plaintiffs served nine

15   Interrogatories and nine Requests for Production on the Intervenor-Defendants. (Doc. 191

16   at 8.) On November 13, 2023, the Intervenor-Defendants served twenty-one Requests for

17   Admissions, ten Interrogatories, and five Requests for Production on each Plaintiff. (*Id.*)

18   The Intervenor-Defendants also served three Requests for Production and twelve

19   Interrogatories on AIA. (*Id.*)

20        The pending motions center on the Intervenor-Defendants' objections to Plaintiffs'

21   discovery requests.  In their November 29, 2023 responses, the Intervenor-Defendants

22   objected to several Requests for Production on the basis of legislative privilege and

23   deliberative process privilege. (*Id.*) On February 8, 2024, the Intervenor-Defendants

24   objected to Plaintiffs' requests to depose them on the basis of legislative privilege, the

25   *Morgan* doctrine, and relevance. (Doc. 191-2 at 95-97.)

26        After the parties conferred, the Plaintiffs filed the instant Motion to Compel

27   requesting that the Court order the Intervenor-Defendants to produce the documents at

28   ---

[2] Laura Toenjes and the Kyrene School District filed a Stipulation in lieu of Answer, informing the Court that they will not be active participants in this case. (Doc. 59 at 2.)

1    issue and to submit to depositions. (Doc. 191.) In their opposition, the Intervenor-

2    Defendants stated that if this Court grants the Plaintiffs' Motion to Compel, they will seek

3    to depose minor Plaintiffs Jane Doe and Megan Roe. (Doc. 199 at 1.) In response, the

4    Plaintiffs filed their Motion for Protective Order requesting that the Court preclude the

5    Intervenor-Defendants from deposing the minor Plaintiffs, or, in the alternative, set

6    reasonable limits on any depositions. (Doc. 196.)

7         Oral argument on the Motions was held on May 7, 2024. (Doc. 207.) At the hearing,

8    the parties informed the Court that many disputes had been resolved and issues remain only

9    with respect to the production of five documents,[3] the proposed depositions of the

10    Intervenor-Defendants, and the proposed depositions of the minor Plaintiffs. (*Id.*) The

11    parties requested that the Court conduct an in-camera review of the five contested

12    documents. The Court granted the parties' request and has reviewed the documents in

13    camera.

## II.      DISCUSSION

### A. Motion to Compel

16         The Intervenor-Defendants oppose the Plaintiffs' discovery requests, arguing that

17    (1) neither the five documents at issue nor their potential testimony are relevant to the

18    Plaintiffs' claims; (2) the documents are protected from disclosure under legislative

19    privilege; (3) Document 15 is also protected by the deliberative process privilege; and (4)

20    the Intervenor-Defendants cannot be deposed due to legislative privilege and the *Morgan*

21    doctrine. (*See* Doc. 198.)

### 1. Legal Standards

23         Federal Rule of Civil Procedure 26(b)(1) permits a party to discover information

24    about "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R.

25    Civ. P. 26(b)(1). The party seeking to compel discovery has the initial burden of

---

[3] The five documents (3, 6, 14, 15, and 18) are described in the Intervenor-Defendants' Privilege Log and consist of emails to Arizona legislators about the enactment of A.R.S. § 15-120.02, one with "talking points" about the Save Women's Sports Act. (Doc. 191-2 at 55-60.)

establishing that the discovery sought is relevant. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). This "is a relatively low bar." *Id.* A party asserting an evidentiary privilege "has the burden to demonstrate that the privilege applies to the information in question." *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 667 (D. Ariz. 2016).

### 2. Relevance

The Plaintiffs argue that the contested documents and the information sought through depositions are highly relevant in determining the Intervenor-Defendants' intent in drafting and supporting A.R.S. § 15-120.02. (Doc. 191 at 14.) The Plaintiffs state that "the 'heart' of this case is determining the [law's] constitutionality, which may involve a determination of what the legislators' motives were in passing [A.R.S. § 15-120.02]." (*Id.* at 12.) The Plaintiffs assert the discovery requests are "reasonably calculated to uncover '[w]hat motivated the Arizona legislature to act.'" (*Id.* at 14 (quoting *Mi Familia Vota v. Hobbs*, 682 F. Supp. 3d 769, 784-85 (D. Ariz. 2023).)

"Legislative motive is relevant in Equal Protection claims." *Vision Church v. Vill. of Long Grove*, 226 F.R.D. 323, 326 (N.D. Ill. 2005); *see also Mi Familia Vota v. Hobbs*, 682 F. Supp. 3d at 784–85 (explaining that the legislature's purpose in enacting state voting laws was "at the heart" of plaintiffs' Equal Protection challenge); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1292 (7th Cir. 1996) ("In an Equal Protection Clause analysis . . . courts often inquire into the motives of legislators or other government actors."); *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 339 (E.D. Va. 2015) (proof of legislative intent is "relevant and extremely important as direct evidence."). Courts have recognized the relevance of discovering legislative materials in Equal Protection cases. *See Bethune-Hill*, 114 F. Supp. 3d at 339 ("[A]ny documents containing the opinions and subjective beliefs of legislators or their key advisors would be relevant to the broader inquiry into legislative intent."); *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1071 (D. Ariz. 2014) ("Motive is often most easily discovered by examining the unguarded acts and statements of those who would otherwise attempt to conceal evidence of discriminatory intent."); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) ("[C]ontemporary

1  statements by members of the decisionmaking body, minutes of its meetings, or reports"
2  may be relevant to determining legislative intent).

3  The Court concludes that the discovery Plaintiffs seek is relevant to their Equal
4  Protection claim. Plaintiffs seek to discover information pertaining to the legislative history
5  of A.R.S. § 15-120.02 and the governmental purpose served by the law. (Doc. 191 at 14.)
6  The email correspondence between legislators directly relates to the adoption of A.R.S. §
7  15-120.02. *Id.* The Plaintiffs seek to question the Intervenor-Defendants regarding their
8  motives for passing A.R.S. § 15-120.02. *Id.* This discovery may shed light on whether the
9  Arizona legislature acted with a constitutionally permissible purpose in enacting A.R.S. §
10  15-120.02.

11  The Intervenor-Defendants argue that the discovery sought is not relevant because
12  the motivation of one legislator cannot be attributed to the whole. (Doc. 198 at 5 ("The
13  statements of a handful of lawmakers" are generally insufficient to show discriminatory
14  intent because they "may not be probative of the intent of the legislature as a whole.")
15  (quoting *United States v. Carillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023).) However,
16  whether a document is discoverable and whether it constitutes probative evidence are two
17  different inquiries guided by different principles. *Carillo-Lopez* considers the probative
18  value of particular types of evidence of legislative intent; it does not address whether
19  evidence of legislative intent is discoverable. *See Carillo-Lopez*, 68 F.4th at 1140-41. Of
20  course "courts must use caution when seeking to glean a legislature's motivations from the
21  statements of a handful of lawmakers," but "that does not mean evidence of an individual
22  legislator's motive is irrelevant to the question of the legislature's motive." *Mi Familia
23  Vota*, 343 F.R.D. at 88; *see also Mi Familia Vota*, 682 F. Supp. 3d at 785 (the fact that
24  statements by individual lawmakers may alone be insufficient to establish the motivation
25  of the legislature does not eliminate the relevance of such statements); *Bethune-Hill*, 114
26  F. Supp. 3d at 339-40 ("[I]t may be true that 'the individual motivations' of particular
27  legislators may be neither necessary nor sufficient for Plaintiffs to prevail," but "that does
28  not mean that the 'evidence cannot constitute an important part' of the case presented.).
//

- 5 -
Add. 5

### 3. Legislative Privilege

Legislative privilege is a qualified privilege that shields legislators from the compulsory evidentiary process. *Mi Familia Vota*, 682 F. Supp. 3d at 782; *see also Lee v. City of Los Angeles,* 908 F.3d 1175, 1187 (9th Cir. 2018) (holding that depositions of local legislators are barred by legislative privilege even in "extraordinary circumstances."); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1299 (9th Cir. 1984) (holding that a corporation's effort to depose city officials to determine their individual motives for enacting a zoning ordinance was precluded under legislative privilege). Legislative privilege is a personal one and may be asserted or waived by each individual state legislator. *Favors v. Cuomo*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012). A waiver of legislative privilege need not be explicit or unequivocal, rather, waiver can occur when a party testifies as to otherwise privileged matters, shares privileged communications with outsiders, or through a party's litigation conduct in a civil case. *See Favors*, 285 F.R.D. at 212; *Singleton v. Merrill*, 576 F. Supp. 3d 931, 942 (N.D. Ala. 2021).

The Court concludes that the Intervenor-Defendants waived their legislative privilege by voluntarily participating in this lawsuit and putting their intent at issue. The Court finds *Mi Familia Vota v. Fontes,* 2023 WL 8183557 (D. Ariz. Sept. 14, 2023) persuasive. There, two legislators voluntarily intervened in a lawsuit to defend the state voting laws. *Id.* at *2. In rejecting the legislators' objections to producing documents and sitting for depositions, the court concluded that the legislators could not "actively participate in this litigation yet avoid the burden of discovery regarding their legislative activities." *Id.* The court explained that "the only reasonable inference from the Legislators' litigation conduct is that they have decided to forego [legislative privilege] in pursuit of an opportunity to defend in court their decisions as legislators." *Id.* at *3 (quoting *Singleton*, 576 F. Supp. 3d at 941).

As was the case in *Mi Familia Vota v. Fontes*, the Intervenor-Defendants "are not seeking immunity from this suit," but rather seek to "actively participate in this litigation while avoiding the burden of discovery regarding their legislative activities." *See* 2023 WL 8183557 at *2 (quoting *Powell v. Ridge*, 247 F.3d 520, 525 (3rd Cir. 2001). As in *Mi*

*Familia Vota*, the Plaintiffs did not seek discovery from the Intervenor-Defendants until they intervened in this action. In moving to intervene, the Intervenor-Defendants emphasized their "unique interest in defending the constitutionality of laws duly enacted by the Arizona legislature." (Doc. 19 at 1.) Finally, like *Mi Familia Vota*, the Intervenor-Defendants put their legislative intent at issue in their assertions that (1) the law does not discriminate on the basis of transgender status, (Doc. 82 at 13), and (2) the purpose of the law is to "redress past discrimination against women in athletics" and "promote equality of athletic opportunity between the sexes" in school sports. (Doc. 19 at 12.)

The Intervenor-Defendants argue that *Mi Familia Vota* is distinguishable. They claim they had a heightened interest in intervening in this case because the Arizona Attorney General disqualified herself from defending A.R.S. § 15-120.02. The Intervenor-Defendants also argue that they did not put their motives at issue and that the Plaintiffs have not alleged discriminatory intent in this suit. (Doc. 198 at 6, 8.) These arguments are unpersuasive.

Whether the Intervenor-Defendants had an interest or a heightened interest in intervention is of no moment. They intervened in this litigation voluntarily. Under Arizona law, the Speaker and President are "entitled to be heard" "[i]n any proceeding in which a state statute … is alleged to be unconstitutional." A.R.S. § 12-1841(A). The Speaker and President may, in their discretion, (1) intervene as a party, (2) file briefs in the lawsuit, or (3) "*choose not to participate*" in the lawsuit. A.R.S. § 12-1841(D) (emphasis added). The Intervenor-Defendants chose to intervene.[4] Furthermore, although Attorney General Mayes disqualified herself from defending the law, she authorized Defendant Horne, a named defendant in the Plaintiffs' Complaint, to defend the law.[5] At the time intervention

---

[4] While the Intervenor-Defendants have not yet filed an answer in this case, as was the case in *Mi Familia Vota*, they did file a Motion to Intervene (Doc. 19), Response to the Plaintiffs' Motion for Preliminary Injunction (Doc. 82), and a Motion to Dismiss Plaintiffs' claims (Doc. 146).

[5] Under A.R.S. § 41-192(E), in the event that the attorney general is disqualified, "the state agency is authorized to make expenditures and incur indebtedness to employ attorneys to provide the representation or services."

1 was granted, Defendant Horne had already retained counsel, filed several motions,

2 answered the complaint, and confirmed his intention to vigorously defend this lawsuit. (*See*

3 Doc. 20, 21, 24, 31, 39, 42, 57, 58, 66, 67, 71, 72, 73.)

4       Whether the Plaintiffs alleged in their Complaint that the legislature acted with

5 discriminatory intent is similarly irrelevant. Legislative purpose and motive is at issue due

6 to the very nature of the claim. In this Equal Protection challenge, the government must

7 establish that its sex-based classification is substantially related to an important

8 government objective. *See Craig v. Boren,* 429 U.S. 190, 197 (1976); *Karnoski v. Trump,*

9 926 F.3d 1180, 1200–01 (9th Cir. 2019). The Intervenor-Defendants assert that the law is

10 substantially related to "redress[ing] past discrimination against women in athletics" and

11 "promot[ing] equality of athletic opportunity between the sexes" in school sports. (Doc. 82

12 at 12.) Plaintiffs properly seek evidence in discovery to evaluate the support for the

13 Intervenor-Defendants' assertions.

14     **4. Deliberative Process Privilege**

15       The Intervenor-Defendants argue that deliberative process privilege provides an

16 additional basis for precluding the disclosure of Document 15. (Doc. 198 at 15-17.)

17       Deliberative process privilege is a form of executive privilege that shields from

18 disclosure "documents reflecting advisory opinions, recommendations and deliberations

19 comprising part of a process by which governmental decisions and policies are

20 formulated." *United States Fish & Wildlife Serv. v. Sierra Club, Inc*., 592 U.S. 261, 267

21 (2021) (quoting *NLRB v. Sears, Roebuck & Co*., 421 U. S. 132, 150 (1975)) (emphasis

22 added). The purpose of deliberative process privilege is to protect government agencies

23 from being "forced to operate in a fishbowl." *Id.* (quoting *EPA v. Mink*, 410 U.S. 73, 87

24 (1973)). Deliberative process privilege does not apply here because it is an executive

25 privilege rendering executive agencies immune from normal disclosure or discovery in

26 civil litigation.

27 //

28 //

//

### 5. The *Morgan* Doctrine

The Intervenor-Defendants argue that the *Morgan* doctrine provides an independent basis for denying the Plaintiffs' deposition requests. (Doc. 198 at 12-15.)

The *Morgan* doctrine specifies that a party may not involuntarily depose "a high-ranking government official" absent "exceptional circumstances." *United States v. Morgan,* 313 U.S. 409 (1941). Judges "generally only consider subjecting a high-ranking government official to a deposition if the official has first-hand knowledge related to the claims being litigated and other persons cannot provide the necessary information." *Freedom from Religion Found., Inc. v. Abbott*, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017). The purpose of the *Morgan* doctrine is to allow high ranking government officials to serve in their official capacities without being "unduly entangled in civil litigation." *In re Gold King Mine Release in San Juan Cnty.,* 2021 WL 3207351, at *2 (D.N.M. Mar. 20, 2021).

The Intervenor-Defendants cite *League of United Latin Am. Citizens v. Abbott*, 2022 WL 2866673, at *2 (W.D. Tex. July 6, 2022), to support their assertion that the *Morgan* doctrine protects them from being deposed. In *Abbott,* the plaintiffs alleged that the redistricting plans adopted by the Texas Legislature violated the Equal Protection Clause and sought to depose the Speaker, General Counsel, and Parliamentarian of the Texas House of Representatives about their motives. *Id.* at *2. The court held that the *Morgan* doctrine prevented plaintiffs from deposing the state legislators because "[c]ourts are supposed to insulate high-ranking government officials 'from the constant distraction of testifying in lawsuits' in part because we need the government to function.'" *Id.* (quoting *Jackson Mun. Airport Auth. v. Reeves*, 2020 WL 5648329, at *3 (S.D. Miss. Sept. 22, 2020).

The *Morgan* doctrine does not apply here because the Intervenor-Defendants voluntarily joined this lawsuit. There is no need to insulate the Intervenor-Defendants from the distraction of this lawsuit because they requested to participate in the action. The purposes underpinning the *Morgan* doctrine simply do not apply when state legislators intentionally insert themselves as a party to the litigation.

In conclusion, the Court holds that (1) the discovery sought by the Plaintiffs is relevant to their Equal Protection claim; (2) the Intervenor-Defendants waived their legislative privilege; (3) deliberative process privilege does not apply to Document 15; and (4) the *Morgan* doctrine does not protect Intervenor-Defendants from being deposed. Accordingly, the Intervenor-Defendants must produce documents 3, 6, 14, 15 and 18 and submit to deposition.

## B. Motion for Protective Order

Plaintiffs move for a protective order to prevent Intervenor-Defendants from deposing minor Plaintiffs.[6] (Doc. 196 at 2.) In the alternative, Plaintiffs request that the Court set reasonable limits on such depositions. (*Id.*) The Court will allow Intervenor-Defendants to depose minor Plaintiffs but impose limitations.

### 1. Intervenor-Defendants may depose minor Plaintiffs.

Plaintiffs' counsel argues that allowing Intervenor-Defendants to depose minor Plaintiffs would subject them to "embarrassment, oppression, or undue burden." (Doc. 196 at 5.) Plaintiffs' counsel also argues that Intervenor-Defendants can obtain relevant information by deposing the minor Plaintiffs' mothers. (*Id.*) Intervenor-Defendants respond that "it is well settled that a defendant has the right to depose the plaintiff." (Doc. 199 at 3.) Intervenor-Defendants argue that depositions of the minor Plaintiffs are permissible under Rule 26 because the information sought is relevant and non-privileged. (*Id.*)

Federal Rule of Civil Procedure 26(b)(1) permits a party to discover information about "any matter, not privileged, which is relevant to the subject matter involved in the pending action" regardless of its admissibility at trial. Fed. R. Civ. P. 26. Additionally, Rule 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court" subject to the restrictions set forth therein. Fed. R. Civ. P.

---

[6] Intervenor-Defendants asserted that if Plaintiffs are permitted to depose them, then they will seek to depose the minor Plaintiffs. (Doc. 199 at 1.) At hearing on the motions, Intervenor-Defendants stated that they had refrained from deposing Plaintiffs believing it would subject the legislators to being deposed. Intervenor-Defendants explain that if the Court orders their depositions, they wish to proceed with deposing the minor Plaintiffs.

30. Depositions are ordinarily allowed unless it is clear the information sought has no possible bearing on the matter at hand. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1031 (E.D. Cal. 2010).

The court may proscribe or limit discovery to prevent abuse. *See* Fed. R. Civ. P. 26©. Under Rule 26(c), upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The court considers all factors to determine whether the totality of the circumstances justifies the entry of a protective order. *Roberts v. Clark Cnty. Sch. Dist.,* 312 F.R.D. 594, 603 (D. Nev. Jan. 11, 2016).

The Court concludes that Intervenor-Defendants may depose the minor Plaintiffs. *See Edgin on behalf of I.E. v. Blue Valley USD 220,* 2021 WL 1750861, at *2 (D. Kan. May 4, 2021) (permitting the deposition of a minor stating "it's highly unusual to entirely preclude a deposition, particularly of a named party in the case."); *Hamilton v. Southland Christian Sch., Inc.*, 2011 WL 13143561, at *3 (M.D. Fla. Apr. 18, 2011) ("The great weight of the decisions permit a deposition when children are parties or witnesses to the claims in dispute, with reasonable restrictions."); *Kuyper v. Board of County Com'rs of Weld County*, 2010 WL 4038831, *1–2 (D. Colo. Oct. 14, 2010) (allowing deposition of seven year old victim of assault four years earlier by violent foster child placed in victim's home, in suit against county); *Graham v. City of New York*, 2010 WL 3034618, *4–5 (E.D. N.Y. Aug. 3, 2010) (allowing deposition to proceed "cautiously and sensitively" of seven year old child who three years earlier had witnessed police forcibly remove his father from the car, handcuff him, and place him in a police vehicle, leaving child alone, in civil rights suit against police); *Gray v. Howlett Lumber Co.*, 2007 WL 2705748 (Mass. Super. Aug. 9, 2007) (allowing deposition of ten-year-old child, who was principal witness to death of sibling which was the basis for the suit, while imposing reasonable restrictions); *In re Transit Management of Southeast Louisiana, Inc.*, 761 So.2d 1270 (La. 2000) (allowing deposition despite seven-year-old child's physician's opinion that deposition would cause

- 11 -

considerable mental stress, in personal injury action). While the Court agrees that Intervenor-Defendants' depositions of minor Plaintiffs may go forward, the Court will impose reasonable limitations.

**2. Intervenor-Defendants shall comply with the court-imposed limitations.**

If the minor Plaintiffs are to be deposed, Plaintiffs' counsel proposes three limitations:

1. Intervenor-Defendants cannot pursue questioning concerning either the legitimacy or the appropriateness of the minor Plaintiffs' medical and/or mental health treatment;

2. Intervenor-Defendants cannot refer to the minor Plaintiffs' medical records and letters from mental health providers or ask questions about the contents of those records/letters; and

3. Intervenor-Defendants cannot ask questions referencing sexual abuse, assault, or misconduct.

(Doc. 196 at 7-8.)

Intervenor-Defendants oppose Plaintiffs' proposed limitations stating that the limitations would preclude Intervenor-Defendants from obtaining relevant and non-privileged information. (Doc. 199 at 3.) However, at hearing, Intervenor-Defendants could not identify any relevant information that that would be precluded by Plaintiffs' first and third limitations.[7] Thus, the Court will impose proposed limitations 1 and 3.

---

[7] When asked at oral argument to provide examples of some questions that the first limitation would prevent, Intervenor-Defendants responded: (1) You (minor Plaintiff) mentioned that you had difficulty concentrating and thinking, can you just tell us about that? (2) You say gender dysphoria interferes with your neurological functioning, can you explain what that means? (May 7, 2024, Hearing, Unofficial Transcript at 50 ¶¶ 3-6.) Intervenor-Defendants' proffered questions would not be precluded by the first limitation because the questions do not relate to the *legitimacy* or the *appropriateness* of the minor Plaintiffs' medical and/or mental health treatment. As Intervenor-Defendants have not identified any relevant information that would be precluded by the first condition, Intervenor-Defendants are precluded from questioning Plaintiffs about the legitimacy and/or the appropriateness of their medical and/or mental health treatment. As the Court previously noted, the "appropriateness of medical treatment for gender dysphoria is not at issue in this case." (Doc. 127 at 17.)

- 12 -

With respect to limitation 2, Intervenor-Defendants and Defendant AAIA did identify relevant information that they might seek in follow up questions to the minor Plaintiffs.[8] Consequently, the Court will allow Intervenor-Defendants to reference the minor Plaintiffs' medical records and letters from mental health providers to the extent that it is necessary to confirm or clarify the record.

## III.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** Plaintiffs' Motion to Compel (Doc. 191) is **granted**.

**IT IS FURTHER ORDERED** Plaintiffs' Motion for Protective Order (Doc. 196) is **granted in part and denied in part**. Intervenor-Defendants may depose minor Plaintiffs, subject to the following limitations:

1. Intervenor-Defendants shall not question minor Plaintiffs about the legitimacy or the appropriateness of the Plaintiffs' medical and/or mental health treatment.

2. Intervenor-Defendants may reference the minor Plaintiffs' medical records and/or letters from mental health providers only to the extent that it is necessary to confirm or clarify the record.

3. Intervenor-Defendants shall not ask the minor Plaintiffs any questions regarding sexual abuse, assault, or misconduct.

//

//

---

[8] Intervenor-Defendants stated that while they do not intend to reference Plaintiffs' medical records, it may become necessary if "somebody denies something and we have to bring it up just to get everyone on the same page." (May 7, 2024, Hearing, Unofficial Transcript at 51 ¶¶ 11-13.) When asked for examples of the types of questions that this limitation might interfere with, Intervenor-Defendants proffered: (1) How tall are you (minor Plaintiff) compared to other people in your grade? (2) What percentile is that vis-à-vis your peers? (3) Do you think being tall gives you an advantage when you are running or playing basketball? (May 7, 2024, Hearing, Unofficial Transcript at 51 ¶25; 52 ¶¶ 1-4.) The Court finds that this line of questioning may be relevant to Intervenor-Defendants' defenses, specifically, whether A.R.S. § 15-120.02 is substantially related to an important government interest. *See Karnoski*, 926 F.3d at 1200–01; *Craig*, 429 U.S. at 197.

- 13 -

**IT IS FURTHER ORDERED** re-setting the remaining case deadlines as follows:

1. Plaintiffs' Disclosure of Rule 26(a)(2) Expert Witnesses Material: August 12, 2024;

2. Close of Fact Discovery: August 20, 2024

3. Disclosure of Lay Witnesses: August 20, 2024

4. Defendants' Disclosure of Rule 26(a)(2) Expert Witnesses Material: September 11, 2024

5. Rebuttal Expert Opinions: October 25, 2024

6. Close of Expert Discovery: December 30, 2024

7. Dispositive Motions: January 28, 2025.

Dated this 20th day of June, 2024.

Jennifer G. Zipps
United States District Judge

D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
Telephone: (314) 562-0031
John.Sauer@james-otis.com

*Attorneys for Intervenor-Defendants President Petersen and Speaker Toma*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe, *et al.*, <br><br> Plaintiffs, <br><br><br> v. <br><br><br> Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction, *et al.*, <br><br> Defendants. | Case No. 4:23-cv-00185-JGZ <br><br> **Declaration of Justin D. Smith in Opposition to Plaintiffs' Motion to Compel Discovery** |

I, Justin D. Smith, declare as follows:

1.      I am an attorney at the James Otis Law Group, LLC and counsel for Intervenors-Defendants President Warren Petersen and Speaker Ben Toma (the "Legislative Leaders") in the above-captioned matter.  I am a member of the bar of the State of Missouri.  I submit this declaration in opposition to Plaintiffs' Motion to Compel Discovery.

2.      In this action, the Legislative Leaders have produced 415 documents totaling

1,130 pages of records.

3.  Attached as <u>Exhibit A</u> is a true and correct copy of correspondence dated March 7, 2024 relating to the Legislative Leaders' production of discovery.

4.  On November 29, 2023, the Legislative Leaders produced 335 pages of documents.  Ex. A, at 2.

5.  On January 19, 2024, the Legislative Leaders produced 89 pages of documents.  *Id.* at 1.

6.  On March 7, 2024, the Legislative Leaders produced 706 pages of documents.  *Id.*

7.  As set forth on their privilege log, the Legislative Leaders have withheld as privileged only five documents that total a combined 14 pages.  *See* Doc. 191-2, Ex. 5, Doc. #3, #6, #14, #15, #18.

8.  Attached as <u>Exhibit B</u> is a true and correct copy of Intervenor-Defendants' Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories, dated March 7, 2024.

9.  Attached as <u>Exhibit C</u> is a true and correct copy of Intervenor-Defendants' Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents, dated March 7, 2024.

10.  Attached as <u>Exhibit D</u> is a true and correct copy of correspondence dated February 7, 2024 from Plaintiffs' counsel containing requests for admission to the Legislative Leaders as well as discovery requests to Defendant Superintendent Horne and Defendant AIA.

11.  Plaintiffs' counsel sent written discovery to the Legislative Leaders, Defendant Horne, and Defendant AIA approximately two hours after demanding the depositions of the Legislative Leaders.  *Compare* Exhibit D *with* Doc. 191-2, Ex. 9, at 3 (PDF p. 96).

12.  Attached as <u>Exhibit E</u> is a true and correct copy of Plaintiffs' Initial Rule 26(a)(1) Disclosures dated September 29, 2023.

13.    No party identified the Legislative Leaders as witnesses in their initial disclosures.

14.    Plaintiffs have not taken any depositions in this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 18, 2024                    /s/ Justin D. Smith_____

                                         Justin D. Smith

**Justin Smith**

| | |
|---|---|
| **From:** | Ken Capps |
| **Sent:** | Thursday, March 7, 2024 4:19 PM |
| **To:** | cproksel@omlaw.com; azimmerman@debevoise.com; jrassi@debevoise.com; jhamid@debevoise.com; awhelan@nclrights.org; rberg@nclrights.org; diw@wb-law.com; mckayw@wb-law.com; maria.syms@azed.gov; jellel@tuhsd.k12.az.us; dpotts@jshfirm.com; adaltrey@jshfirm.com; lasmith@dmyl.com; kristian.nelson@lewisbrisbois.com |
| **Cc:** | Justin Smith; John Sauer; Michael Talent |
| **Subject:** | RE: Doe v Horne - 4:23-cv-00185 - Intervenor Defendants Responses and Objections - Discovery |
| **Attachments:** | 2024.03.07 LL Supplemental Objections and Responses to Ps First Interrogatories.pdf; 2024.03.07 LL Supplemental Objections and Responses to Ps First RFPs.pdf |

Dear Counsel,

Regarding Doe v. Horne, 4:23-cv-00185, on behalf of Intervenor-Defendants please find the attached documents: (1) Supplemental objections and responses to Plaintiffs' first set of interrogatories; and (2) Supplemental objections and responses to Plaintiffs' first set of requests for production.

Additionally, each of you should soon receive a separate email with a secure link to complete the secure file transfer of a third production by Legislative Leaders. The documents span LL000425 – LL001130. The password to access the zip-file is: ████████ .

Please know that no document has been withheld that needs to be added to the privilege log. Plaintiffs previously agreed that privileged communications between counsel and clients did not need to be logged. No other documents have been withheld as privileged.

Thank you,

Ken Capps

---

**From:** Ken Capps
**Sent:** Friday, January 19, 2024 4:24 PM
**To:** cproksel@omlaw.com; azimmerman@debevoise.com; jrassi@debevoise.com; jhamid@debevoise.com; awhelan@nclrights.org; rberg@nclrights.org; diw@wb-law.com; mckayw@wb-law.com; maria.syms@azed.gov; jellel@tuhsd.k12.az.us; dpotts@jshfirm.com; adaltrey@jshfirm.com; lasmith@dmyl.com; kristian.nelson@lewisbrisbois.com
**Cc:** Justin Smith <Justin.Smith@james-otis.com>; John Sauer <john.sauer@james-otis.com>; Michael Talent <Michael.Talent@james-otis.com>
**Subject:** RE: Doe v Horne - 4:23-cv-00185 - Intervenor Defendants Responses and Objections - Discovery

Dear Counsel,

Regarding Doe v. Horne, 4:23-cv-00185, each of you should have received a separate email with a secure link to complete the secure file transfer of the second production by Legislative Leaders. The documents span LL000336 - LL000424. The password to access the zip-file is: ████████ .

Thank you,

1

Ken Capps

---

**From:** Ken Capps
**Sent:** Wednesday, November 29, 2023 2:57 PM
**To:** 'cproksel@omlaw.com' <cproksel@omlaw.com>; 'azimmerman@debevoise.com' <azimmerman@debevoise.com>; 'jrassi@debevoise.com' <jrassi@debevoise.com>; 'jhamid@debevoise.com' <jhamid@debevoise.com>; 'awhelan@nclrights.org' <awhelan@nclrights.org>; 'rberg@nclrights.org' <rberg@nclrights.org>; 'diw@wb-law.com' <diw@wb-law.com>; 'mckayw@wb-law.com' <mckayw@wb-law.com>; 'maria.syms@azed.gov' <maria.syms@azed.gov>; 'jellel@tuhsd.k12.az.us' <jellel@tuhsd.k12.az.us>; 'dpotts@jshfirm.com' <dpotts@jshfirm.com>; 'adaltrey@jshfirm.com' <adaltrey@jshfirm.com>; 'lasmith@dmyl.com' <lasmith@dmyl.com>; 'kristian.nelson@lewisbrisbois.com' <kristian.nelson@lewisbrisbois.com>
**Cc:** Justin Smith <Justin.Smith@james-otis.com>; John Sauer <john.sauer@james-otis.com>
**Subject:** Doe v Horne - 4:23-cv-00185 - Intervenor Defendants Responses and Objections - Discovery

Dear Counsel,

Regarding Doe v. Horne, 4:23-cv-00185, on behalf of Intervenor-Defendants please find the attached documents: (1) Objections and Responses to Plaintiffs' first set of interrogatories; (2) Objections and Responses to Plaintiffs' first set of requests for production; and (3) a privilege log accompanying Intervenor-Defendants' document production.

The document production consists of documents bates-stamped LL000001 - LL000335. Each of you will receive a separate email with a secure link to complete the secure file transfer of those documents. The password to access the zip-file is: ███████.

Thank you,

**Ken Capps** | Attorney
James Otis Law Group
ken.capps@james-otis.com

D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
Telephone: (314) 562-0031
John.Sauer@james-otis.com

*Attorneys for Intervenor-Defendants President Petersen and Speaker Toma*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## TUCSON DIVISION

| | |
|---|---|
| Jane Doe, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction, *et al.*, <br><br> Defendants. | Case No. 4:23-cv-00185-JGZ <br><br> **Intervenor-Defendants' Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories** |

Intervenor-Defendants Senate President Warren Petersen and Speaker of the House Ben Toma (the "Legislative Leaders"), by and through undersigned counsel, hereby serve their Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each person who provided information in preparing your Motion to Dismiss, Opposition to Plaintiffs' Motion for a Preliminary Injunction, and responses to Plaintiffs' First Set of Requests for Production of Documents and these

Interrogatories, and for each such person, state the following: (a) their name, address, and telephone number; (b) their relationship to you and to Plaintiffs; and (c) a detailed description of the information that they provided.

**RESPONSE TO INTERROGATORY NO. 1:**  The Legislative Leaders object that this interrogatory seeks attorney work product and mental impressions.  *See, e.g.*, *Becker v. TIG Ins. Co.*, No. 3:21-CV-05185-JHC, 2022 WL 13925733, at *1 (W.D. Wash. Oct. 24, 2022) (citing cases).  The Legislative Leaders further object that this interrogatory is outside the scope permitted by Rule 26(b)(1) because it is not relevant to any party's claim or defense. **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:** Subject to and without waiving all objections previously asserted, the Legislative Leaders provide the following non-privileged information.

No person provided the Legislative Leaders with information to prepare their Motion to Dismiss.

The only individuals that provided the Legislative Leaders with information to prepare their Opposition to Plaintiffs' Motion for a Preliminary Injunction were Dr. Gregory A. Brown, Dr. James. M. Cantor, and Dr. Chad Thomas Carlson.  All information they provided is contained in their publicly filed declarations, Docs. 82-1, 82-2, 82-3, 87-1, 87-2, and 87-3.  They may be contacted through counsel for the Legislative Leaders.

No person provided the Legislative Leaders with information to prepare their responses to Plaintiffs' First Set of Requests for Production or First Set of Interrogatories.

**INTERROGATORY NO. 2:** Without time limitation, identify any and all student athletes who have contacted you who are playing school sports in Arizona and who feel that they have been treated unfairly or faced unfair or unsafe competition as a result of a transgender girl's participation in their sport.

**RESPONSE TO INTERROGATORY NO. 2:**  The Legislative Leaders object to this interrogatory's lack of time limitation as outside the scope permitted by Rule 26(b)(1) because information from legislative sessions in which S.B. 1165 did not pass is not

1  relevant to any party's claim or defense, is not proportional to the needs of the case, and
2  imposes an undue burden on the Legislative Leaders that outweighs its benefit. The
3  Legislative Leaders further object to the extent this interrogatory seeks information
4  protected by the legislative privilege. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175,
5  1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011). The Legislative
6  Leaders further object to the extent this request seeks documents protected by the
7  deliberative process privilege. *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099-GEB-
8  CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008). The Legislative Leaders further
9  object to the definition of "you" to the extent it encompasses other legislators and staff of
10 the Arizona Senate and House of Representatives who are not parties to this lawsuit.

11         Subject to and without waiving these objections, the Legislative Leaders provide
12 the following relevant, non-privileged information from July 1, 2021 to March 30, 2022,
13 which encompasses the entire interim session prior to the Fifty-fifth Legislature – Second
14 Regular Session until the day the Arizona Governor signed S.B. 1165. All testimony
15 received by the Arizona Senate Committee on the Judiciary and Arizona House of
16 Representatives Committee on the Judiciary in hearings on S.B. 1165 on January 20, 2022
17 and March 9, 2022, respectively, is publicly available and equally accessible to Plaintiffs.
18 *See* Hearing on S.B. 1165 before the Arizona Senate Committee on the Judiciary, 55th
19 Legislature, Second Regular Session (Jan. 20, 2022), *at*
20 https://www.azleg.gov/videoplayer/?eventID=2022011057; Hearing on S.B. 1165 before
21 the Arizona House of Representatives Committee on Judiciary, 55th Legislature, Second
22 Regular Session (Mar. 9, 2022), *at*
23 https://www.azleg.gov/videoplayer/?eventID=2022031027. Correspondence received by
24 President Petersen and Speaker Toma relating to S.B. 1165 is available in the documents
25 produced in response to Plaintiffs' First Set of Requests for Production of Documents to
26 Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma.
27 Intervenor-Defendants will supplement this response if additional responsive, non-
28 privileged information is located.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:** Subject to and without waiving all objections previously asserted, the Legislative Leaders provide the following non-privileged information. All testimony received by the Arizona House of Representatives Committee on Health & Human Services in a hearing on H.B. 2706 on February 13, 2020, is publicly available and equally accessible to Plaintiffs. *See* Hearing on H.B. 2706 before the Arizona House of Representatives Committee on Health & Human Services, 54th Legislature, Second Regular Session (Feb. 13, 2020), at https://www.azleg.gov/videoplayer/?eventID=2020021411&startStreamAt=3055; https://www.azleg.gov/videoplayer/?eventID=2020021413.

Correspondence received by President Petersen and Speaker Toma from August 19, 2019 to present is available in the documents produced in response to Plaintiffs' First Set of Requests for Production of Documents to Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma.

Intervenor-Defendants will supplement this response if additional responsive, non-privileged information is located.

**INTERROGATORY NO. 3:** Without time limitation, identify any and all complaints that you have received because of a transgender girl competing with or against students in a girls' school sports contest, and identify the complainant's affiliation with the school featured in the complaint.

**RESPONSE TO INTERROGATORY NO. 3:** The Legislative Leaders object to this interrogatory's lack of time limitation as outside the scope permitted by Rule 26(b)(1) because information from legislative sessions in which S.B. 1165 did not pass is not relevant to any party's claim or defense, is not proportional to the needs of the case, and imposes an undue burden on the Legislative Leaders that outweighs its benefit. The Legislative Leaders further object to the extent this interrogatory seeks information protected by the legislative privilege. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011). The Legislative Leaders further object to the extent this request seeks documents protected by the

deliberative process privilege. *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008). The Legislative Leaders further object to the definition of "you" to the extent it encompasses other legislators and staff of the Arizona Senate and House of Representatives who are not parties to this lawsuit.

Subject to and without waiving these objections, the Legislative Leaders provide the following relevant, non-privileged information from July 1, 2021 to March 30, 2022, which encompasses the entire interim session prior to the Fifty-fifth Legislature – Second Regular Session until the day the Arizona Governor signed S.B. 1165. All testimony received by the Arizona Senate Committee on the Judiciary and Arizona House of Representatives Committee on the Judiciary in hearings on S.B. 1165 on January 20, 2022 and March 9, 2022, respectively, is publicly available and equally accessible to Plaintiffs. *See* Hearing on S.B. 1165 before the Arizona Senate Committee on the Judiciary, 55th Legislature, Second Regular Session (Jan. 20, 2022), *at* https://www.azleg.gov/videoplayer/?eventID=2022011057; Hearing on S.B. 1165 before the Arizona House of Representatives Committee on Judiciary, 55th Legislature, Second Regular Session (Mar. 9, 2022), *at* https://www.azleg.gov/videoplayer/?eventID=2022031027. Correspondence received by President Petersen and Speaker Toma relating to S.B. 1165 is available in the documents produced in response to Plaintiffs' First Set of Requests for Production of Documents to Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma. Intervenor-Defendants will supplement this response if additional responsive, non-privileged information is located.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:** Subject to and without waiving all objections previously asserted, the Legislative Leaders provide the following non-privileged information. All testimony received by the Arizona House of Representatives Committee on Health & Human Services in a hearing on H.B. 2706 on February 13, 2020, is publicly available and equally accessible to Plaintiffs. *See* Hearing on H.B. 2706 before the Arizona House of Representatives Committee on Health & Human

Services, 54th Legislature, Second Regular Session (Feb. 13, 2020), at https://www.azleg.gov/videoplayer/?eventID=2020021411&startStreamAt=3055; https://www.azleg.gov/videoplayer/?eventID=2020021413.

Correspondence received by President Petersen and Speaker Toma from August 19, 2019 to present is available in the documents produced in response to Plaintiffs' First Set of Requests for Production of Documents to Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma.

Intervenor-Defendants will supplement this response if additional responsive, non-privileged information is located.

**INTERROGATORY NO. 4:** Without time limitation, identify any and all Arizona student athletes who have reported to you that they have been physically injured by a transgender athlete, including the age and grade of the athletes involved, the sport in which the injury occurred, the date or dates of the alleged injuries, any known witnesses to the alleged injury, and the circumstances surrounding the alleged injury.

**RESPONSE TO INTERROGATORY NO. 4:** The Legislative Leaders object to this interrogatory's lack of time limitation as outside the scope permitted by Rule 26(b)(1) because information from legislative sessions in which S.B. 1165 did not pass is not relevant to any party's claim or defense, is not proportional to the needs of the case, and imposes an undue burden on the Legislative Leaders that outweighs its benefit. The Legislative Leaders further object to the extent this interrogatory seeks information protected by the legislative privilege. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011). The Legislative Leaders further object to the extent this request seeks documents protected by the deliberative process privilege. *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008). The Legislative Leaders further object to the definition of "you" to the extent it encompasses other legislators and staff of the Arizona Senate and House of Representatives who are not parties to this lawsuit.

Subject to and without waiving these objections, the Legislative Leaders provide the following relevant, non-privileged information from July 1, 2021 to March 30, 2022, which encompasses the entire interim session prior to the Fifty-fifth Legislature – Second Regular Session until the day the Arizona Governor signed S.B. 1165. All testimony received by the Arizona Senate Committee on the Judiciary and Arizona House of Representatives Committee on the Judiciary in hearings on S.B. 1165 on January 20, 2022 and March 9, 2022, respectively, is publicly available and equally accessible to Plaintiffs. *See* Hearing on S.B. 1165 before the Arizona Senate Committee on the Judiciary, 55th Legislature, Second Regular Session (Jan. 20, 2022), *at* https://www.azleg.gov/videoplayer/?eventID=2022011057; Hearing on S.B. 1165 before the Arizona House of Representatives Committee on Judiciary, 55th Legislature, Second Regular Session (Mar. 9, 2022), *at* https://www.azleg.gov/videoplayer/?eventID=2022031027. Correspondence received by President Petersen and Speaker Toma relating to S.B. 1165 is available in the documents produced in response to Plaintiffs' First Set of Requests for Production of Documents to Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma. Intervenor-Defendants will supplement this response if additional responsive, non-privileged information is located.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:** Subject to and without waiving all objections previously asserted, the Legislative Leaders provide the following non-privileged information. All testimony received by the Arizona House of Representatives Committee on Health & Human Services in a hearing on H.B. 2706 on February 13, 2020, is publicly available and equally accessible to Plaintiffs. *See* Hearing on H.B. 2706 before the Arizona House of Representatives Committee on Health & Human Services, 54th Legislature, Second Regular Session (Feb. 13, 2020), at https://www.azleg.gov/videoplayer/?eventID=2020021411&startStreamAt=3055; https://www.azleg.gov/videoplayer/?eventID=2020021413.

Correspondence received by President Petersen and Speaker Toma from August 19,

2019 to present is available in the documents produced in response to Plaintiffs' First Set of Requests for Production of Documents to Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma.

Intervenor-Defendants will supplement this response if additional responsive, non-privileged information is located.

**INTERROGATORY NO. 5:** Without time limitation, identify all students who participated in or are participating in interscholastic and/or intramural sports in Arizona who have reported to you that they have been denied the opportunity to advance in their respective sports, including but not limited to being denied a spot on a team or failing to obtain a college scholarship, because of students who are transgender participating on sports teams.

**RESPONSE TO INTERROGATORY NO. 5:** The Legislative Leaders object to this interrogatory's lack of time limitation as outside the scope permitted by Rule 26(b)(1) because information from legislative sessions in which S.B. 1165 did not pass is not relevant to any party's claim or defense, is not proportional to the needs of the case, and imposes an undue burden on the Legislative Leaders that outweighs its benefit. The Legislative Leaders further object to the extent this interrogatory seeks information protected by the legislative privilege. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011). The Legislative Leaders further object to the extent this request seeks documents protected by the deliberative process privilege. *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008). The Legislative Leaders further object to the definition of "you" to the extent it encompasses other legislators and staff of the Arizona Senate and House of Representatives who are not parties to this lawsuit.

Subject to and without waiving these objections, the Legislative Leaders provide the following relevant, non-privileged information from July 1, 2021 to March 30, 2022, which encompasses the entire interim session prior to the Fifty-fifth Legislature – Second

1    Regular Session until the day the Arizona Governor signed S.B. 1165. All testimony
2    received by the Arizona Senate Committee on the Judiciary and Arizona House of
3    Representatives Committee on the Judiciary in hearings on S.B. 1165 on January 20, 2022
4    and March 9, 2022, respectively, is publicly available and equally accessible to Plaintiffs.
5    *See* Hearing on S.B. 1165 before the Arizona Senate Committee on the Judiciary, 55th
6    Legislature, Second Regular Session (Jan. 20, 2022), *at*
7    https://www.azleg.gov/videoplayer/?eventID=2022011057; Hearing on S.B. 1165 before
8    the Arizona House of Representatives Committee on Judiciary, 55th Legislature, Second
9    Regular Session (Mar. 9, 2022), *at*
10   https://www.azleg.gov/videoplayer/?eventID=2022031027. Correspondence received by
11   President Petersen and Speaker Toma relating to S.B. 1165 is available in the documents
12   produced in response to Plaintiffs' First Set of Requests for Production of Documents to
13   Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma.
14   Intervenor-Defendants will supplement this response if additional responsive, non-
15   privileged information is located.

16   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:** Subject to and
17   without waiving all objections previously asserted, the Legislative Leaders provide the
18   following non-privileged information. All testimony received by the Arizona House of
19   Representatives Committee on Health & Human Services in a hearing on H.B. 2706 on
20   February 13, 2020, is publicly available and equally accessible to Plaintiffs. *See* Hearing
21   on H.B. 2706 before the Arizona House of Representatives Committee on Health & Human
22   Services, 54th Legislature, Second Regular Session (Feb. 13, 2020), at
23   https://www.azleg.gov/videoplayer/?eventID=2020021411&startStreamAt=3055;
24   https://www.azleg.gov/videoplayer/?eventID=2020021413.

25        Correspondence received by President Petersen and Speaker Toma from August 19,
26   2019 to present is available in the documents produced in response to Plaintiffs' First Set
27   of Requests for Production of Documents to Intervenor-Defendants President Warren
28   Peterson [*sic*] and Speaker Ben Toma.

Intervenor-Defendants will supplement this response if additional responsive, non-privileged information is located.

**INTERROGATORY NO. 6:** Identify all governmental interests that you believe are advanced by Ariz. Rev. Stat. § 15-120.02.

**RESPONSE TO INTERROGATORY NO. 6:**  The Legislative Leaders object to the definition of "you" to the extent it encompasses other legislators and staff of the Arizona Senate and House of Representatives who are not parties to this lawsuit.  Subject to and without waiving this objection, the Legislative Leaders identify the governmental interests that are expressed in S.B. 1165 § 2, the legislative record for S.B. 1165, and all briefing by the Legislative Leaders in this case, including but not limited to:

- Redressing past discrimination against women in athletics;
- Promoting fairness and equal opportunities for women in athletics;
- Providing safety for women in athletics;
- Providing clear and consistent application of sex separation rules in athletics; and
- Providing public accountability through an elected legislative body for sex separation rules in athletics.

**INTERROGATORY NO. 7:** For each of the governmental interests you identified in response to Interrogatory No. 6, state all facts that support your contention that Ariz. Rev. Stat. § 15-120.02 advances those governmental interests.

**RESPONSE TO INTERROGATORY NO. 7:**  The Legislative Leaders object that this interrogatory's requests for "all facts" is outside the scope permitted by Rule 26(b)(1) because it is not proportional to the needs of the case and Plaintiffs have more convenient, less burdensome, and less expensive access to this information than reproducing it here. The Legislative Leaders and Defendant Horne have filed and cited hundreds of pages of expert declarations, studies, and other evidence that support the governmental interests

Add. 29 [10]

1   identified in response to Interrogatory No. 6 and which are too voluminous to reproduce

2   here.  The burden on the Intervenor-Defendants of reproducing the requested facts here

3   outweighs its likely benefit.  The Legislative Leaders further object to the extent this

4   interrogatory seeks premature disclosure of expert reports, which the Legislative Leaders

5   will produce in accordance with the Court's Scheduling Order.  The Legislative Leaders

6   further object to the definition of "you" to the extent it encompasses other legislators and

7   staff of the Arizona Senate and House of Representatives who are not parties to this lawsuit.

8        Subject to and without waiving this objection, the Legislative Leaders identify and

9   incorporate by reference the facts in the following documents:

10  - Facts and studies cited in S.B. 1165 § 2.

11  - Doc. 82-1 – Declaration of Dr. Gregory A. Brown, Ph.D., FACSM, in support

12     of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary

13     Injunction.

14  - Doc. 82-2 – Declaration of James M. Cantor, Ph.D., in Support of [Intervenors'

15     Proposed] Opposition to Plaintiffs' Motion for a Preliminary Injunction.

16  - Doc. 82-3 – Declaration of Dr. Chad Thomas Carlson, M.D., FACSM in Support

17     of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary

18     Injunction.

19  - Doc. 87-1 – Rebuttal Declaration of Dr. Gregory A. Brown, Ph.D., FACSM in

20     Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for

21     a Preliminary Injunction.

22  - Doc. 87-2 – Rebuttal Declaration of James M. Cantor, Ph.D., in Further Support

23     of Intervenor-Defendants' Opposition to Plaintiffs' Motion for a Preliminary

24     Injunction.

25  - Doc. 87-3 – Supplemental Declaration of Dr. Chad Carlson, M.D., FACSM in

26     Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for

27     a Preliminary Injunction.

28  - Doc. 87-4 to Doc. 87-31 – Exhibits 7-34 filed by Intervenor-Defendants for the

Add. 30    11

1    preliminary injunction hearing.

2    - Doc. 92-8 – Expert witness statement of Emma Hilton, PhD.

3    - Doc. 92-9 – Declaration of Dr. Linda Blade, Ph.D., in Support of Defendant
4      Horne's Response to Plaintiffs' Motion for Preliminary Injunction.

5    - Doc. 92-10 to Doc. 92-37 – Exhibits 6-33 filed by Defendant Horne for the
6      preliminary injunction hearing.

7    - Testimony received by the Arizona Senate Committee on the Judiciary and
8      Arizona House of Representatives Committee on the Judiciary in hearings on
9      S.B. 1165 on January 20, 2022 and March 9, 2022, respectively, is publicly
10     available and equally accessible to Plaintiffs.  *See* Hearing on S.B. 1165 before
11     the Arizona Senate Committee on the Judiciary, 55th Legislature, Second
12     Regular      Session      (Jan.      20,      2022),      *at*
13     https://www.azleg.gov/videoplayer/?eventID=2022011057;  Hearing on S.B.
14     1165 before the Arizona House of Representatives Committee on Judiciary, 55th
15     Legislature,   Second   Regular   Session   (Mar.   9,   2022),   *at*
16     https://www.azleg.gov/videoplayer/?eventID=2022031027.

17   - Documents produced in response to Plaintiffs' First Set of Requests for
18     Production of Documents to Intervenor-Defendants President Warren Peterson
19     [*sic*] and Speaker Ben Toma.

20   Intervenor-Defendants will supplement this response if additional responsive, non-
21   privileged information is located.

22   **<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:</u>**   Subject to and
23   without waiving all objections previously asserted, the Legislative Leaders provide the
24   following non-privileged information.

25   - Testimony received by the Arizona House of Representatives Committee on
26     Health & Human Services in a hearing on H.B. 2706 on February 13, 2020, is
27     publicly available and equally accessible to Plaintiffs.  *See* Hearing on H.B. 2706
28     before the Arizona House of Representatives Committee on Health & Human

1      Services, 54th Legislature, Second Regular Session (Feb. 13, 2020), at

2      https://www.azleg.gov/videoplayer/?eventID=2020021411&startStreamAt=30

3      55; https://www.azleg.gov/videoplayer/?eventID=2020021413.

4  Intervenor-Defendants will supplement this response if additional responsive, non-

5  privileged information is located.

6

7  **INTERROGATORY NO. 8:** Explain how excluding Plaintiffs from competing in girls'

8  school sports in Arizona remedies past discrimination and provides equal opportunities for

9  women and safety to women athletes. *See* Intervenor-Defendants' Opposition to Plaintiffs'

10  Motion for a Preliminary Injunction at 5, 13.

11  **RESPONSE TO INTERROGATORY NO. 8:**  The Legislative Leaders object to this

12  interrogatory to the extent it misstates the law by implying that a statute classifying on the

13  basis of sex must be perfectly tailored. *See Nguyen v. INS*, 533 U.S. 53, 70 (2001); *see*

14  *also United States v. Edge Broad. Co.*, 509 U.S. 418, 427 (1993). The Legislative Leaders

15  further object that the Legislative Leaders have not yet received discovery from Plaintiffs.

16  Subject to and without waiving these objections, the Legislative Leaders identify facts in

17  S.B. 1165 § 2, the legislative record for S.B. 1165, and all briefing by the Legislative

18  Leaders in this case, including but not limited to:

19       • Remedying past discrimination and providing equal opportunities for women by

20         preventing displacement of biological females on an athletic team or in an

21         athletic competition by biological males.

22       • Remedying past discrimination and providing equal opportunities for women by

23         preventing biological males from receiving awards, scholarships, or other

24         recognition that otherwise would have been received by a biological female.

25       • Providing safety to women athletes by preventing biological males from

26         competing against biological females in female sports.

27  Intervenor-Defendants will supplement this response if additional responsive, non-

28  privileged information is obtained.

1

2     **INTERROGATORY NO. 9:** Identify all persons involved in drafting, lobbying for,

3 testifying in support of, and/or advancing S.B. 1165 or Ariz. Rev. Stat. § 15-120.02, or any

4 other potential legislation regarding the participation of transgender athletes in Arizona.

5 For each such person, state the following: (a) their name, address, and telephone number;

6 (b) their relationship to you and/or Plaintiffs; and (c) a detailed description of their

7 involvement.

8     **RESPONSE TO INTERROGATORY NO. 9:**   The Legislative Leaders object to the

9 extent this interrogatory, and its requests relating to "drafting," "lobbying for," and

10 "advancing," seek information protected by the legislative privilege. *See, e.g.*, *Lee v. City*

11 *of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290

12 (9th Cir. 2011). The Legislative Leaders further object to the extent this interrogatory seeks

13 information protected by the deliberative process privilege. *Fabbrini v. City of Dunsmuir*,

14 No. CIVS07-1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008). The

15 Legislative Leaders further object because who testified in support of S.B. 1165 is public

16 information and Plaintiffs thus have more convenient, less burdensome, and less expensive

17 access to this information than reproducing it here. The Legislative Leaders further object

18 to this interrogatory's relevant time period, which according to Instruction #9 is January 1,

19 2015 to the date of the response, as outside the scope permitted by Rule 26(b)(1) because

20 information from legislative sessions in which S.B. 1165 did not pass is not relevant to any

21 party's claim or defense, is not proportional to the needs of the case, and imposes an undue

22 burden on the Legislative Leaders that outweighs its benefit. The Legislative Leaders

23 further object to this interrogatory because "advancing" is vague and ambiguous. The

24 Legislative Leaders further object to this interrogatory because "any other potential

25 legislation" is outside the scope permitted by Rule 26(b)(1) since legislation other than S.B.

26 1165 is not relevant to any party's claim or defense, and in addition is vague and ambiguous

27 about what is considered "potential legislation."

28         Subject to and without waiving these objections, the Legislative Leaders provide

the following relevant, non-privileged information from July 1, 2021 to March 30, 2022, which encompasses the entire interim session prior to the Fifty-fifth Legislature – Second Regular Session until the day the Arizona Governor signed S.B. 1165.

1. Hearing on S.B. 1165 before the Arizona Senate Committee on the Judiciary, 55th Legislature, Second Regular Session (Jan. 20, 2022), *at* https://www.azleg.gov/videoplayer/?eventID=2022011057. Witnesses who testified in favor of S.B. 1165 included:
   a. Matt Sharp
   b. Amber Colon
   c. Christine Pierce
   d. Jadis Argiope
   e. Nicole Eidson
   f. Linda Rizzo

2. Hearing on S.B. 1165 before the Arizona House of Representatives Committee on Judiciary, 55th Legislature, Second Regular Session (Mar. 9, 2022), *at* https://www.azleg.gov/videoplayer/?eventID=2022031027. Witnesses who requested to speak in favor of S.B. 1165 included:
   a. Cathi Herrod
   b. Cynthia Couture
   c. Barbara Wyllie
   d. Julie Egea
   e. Carol Rogala
   f. Amber Zenczak
   g. Jadis Argiope
   h. James Bissonett
   i. Ron Johnson
   j. Kara Leong
   k. Shirley Dye

Add. 34    15

| | |
|---|---|
| 1 | l.  Buffalo Rick Galeener |
| 2 | m. Kay Reardon |
| 3 | n.  Sandi Bartlett |
| 4 | o.  Jere Fredenburgh |
| 5 | p.  Rose Sperry |
| 6 | q.  Richard Rutkowski |
| 7 | r.  Susan Hicks |
| 8 | s.  Dennis Genge |
| 9 | t.  Dennis Beals |
| 10 | u.  Edward Treick |
| 11 | v.  Jennifer Wellsman |
| 12 | w. Brent Backus |
| 13 | x.  Todd Maxcy |
| 14 | y.  George Kundert |
| 15 | z.  Mike MacDonald |
| 16 | aa. Mark Logan |
| 17 | bb. Richard Sperry |
| 18 | cc. Steven Pettigrew |
| 19 | dd. Terrence Gillespie |
| 20 | ee. Jerry Clingman |
| 21 | ff.  Theresa Logan |
| 22 | gg. Charles McCain |
| 23 | hh. Geline Coulbourne |
| 24 | ii.  Sheryl Scala |
| 25 | jj.  Dan Van Dusen |
| 26 | kk. Baron Benham |
| 27 | ll.  Rachel Bauer |
| 28 | mm.     Chuck Kirkhuff |

1    nn. Paul Rowe

2    oo. Stephen Harris

3    pp. Mary Morris

4    qq. Corinne Haynes

5    rr.  Valerie Giramberk

6    ss.  Bob Jolley

7    tt.  Barry Graham

8    uu. Richard Reitz

9    vv. Jeffrey Scott Christopher

10    ww.        Margie Heffnleder

11    xx. Merrianne Gelsdorf

12    yy. Cindy New

13    zz. Dorie Duff

14    aaa.        Kathy Walker

15    bbb.        Marcia Barlow

16    ccc.        Lois Scale

17    ddd.        Charmaine Roth

18    eee.        Nikki Colletti

19    fff. Dianna Gates

20    ggg.        Sheryl Schauer

21    hhh.        Linda Wix

22    iii. James McFadzean

23    jjj. Belva Barrick

24    kkk.        David Genge

25    lll. Hannah Toth

26    mmm.    Lynn Ludwig

27    nnn.        Linda Barnes

28    ooo.        Carol Wyatt

1    ppp.    Beverly Ross

2    qqq.    Mary Grace Werner

3    rrr. Diana Dare

4    sss.    Bee Gordon

5    ttt. Scott Kummerfeldt

6    uuu.    Alison Morris

7    vvv.    Vicki Smith

8    www.    Lorelei Nelson-DeNapoli

9    xxx.    Tami Smith

10   yyy.    Marcia Weiss

11   zzz.    Barbara Jennings

12   aaaa.    Craig Stephan

13   bbbb.    Catherine Tunget

14   cccc.    Barbara Smith

15   dddd.    Phillip Klein

16   eeee.    Rachel Walden

17   ffff.    Peggy Bricker

18   gggg.    John Pio

19   hhhh.    Linda Pio

20   iiii.Carrie Heikkala

21   jjjj.Diane Elrod

22   kkkk.    Jill Dunican

23   llll.Robert Louchheim

24   mmmm.    JL Simpson

25   nnnn.    Henry Ganster

26   oooo.    Michelle Sullivan

27   pppp.    Denise Lockwood

28   qqqq.    Ruth Edwards

1       rrrr.    Reid Gottschalk

2       ssss.    Kristine Rodriguez

3       tttt. Annie Gold

4       uuuu.    Claire Haggerty

5       vvvv.    Michael Sullivan

6       wwww.    Carrie Cox

7       xxxx.    James Roth

8       yyyy.    Christine Pierce

9       zzzz.    Janis Flavin

10       aaaaa.    E Seeley

11       bbbbb.    D Seeley

12       ccccc.    Lisa Fink

13       ddddd.    C David

14       eeeee.    Cathi Herrod

15       fffff.    Maral Moffitt

16       ggggg.    George Jennings

17       hhhhh.    Douglas Jennings

18       iiiii.    Mary Ganster

19       jjjjj.    John Justus

20       kkkkk.    Leslie Morrison

21       lllll.    David Seligson

22       mmmmm. Wendy Jonessee

23   3.  Individuals identified in documents produced in response to Plaintiffs' First Set of

24       Requests for Production of Documents to Intervenor-Defendants President Warren

25       Peterson [*sic*] and Speaker Ben Toma.

26   **<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:</u>**  Subject to and

27   without waiving all objections previously asserted, the Legislative Leaders provide the

28   following non-privileged information.

- Testimony received by the Arizona House of Representatives Committee on Health & Human Services in a hearing on H.B. 2706 on February 13, 2020, is publicly available and equally accessible to Plaintiffs.  *See* Hearing on H.B. 2706 before the Arizona House of Representatives Committee on Health & Human Services, 54th Legislature, Second Regular Session (Feb. 13, 2020), at https://www.azleg.gov/videoplayer/?eventID=2020021411&startStreamAt=30 55; https://www.azleg.gov/videoplayer/?eventID=2020021413.

Intervenor-Defendants will supplement this response if additional responsive, non-privileged information is located.

Dated: March 7, 2024

Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

*/s/ Justin D. Smith*
D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com
* *pro hac vice*

*Attorneys for Intervenor-Defendants*

D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
Telephone: (314) 562-0031
John.Sauer@james-otis.com

*Attorneys for Intervenor-Defendants President Petersen and Speaker Toma*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Jane Doe, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction, *et al.*, <br><br><br> Defendants. | Case No. 4:23-cv-00185-JGZ <br><br> **Intervenor-Defendants' Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents** |

Intervenor-Defendants Senate President Warren Petersen and Speaker of the House Ben Toma (the "Legislative Leaders"), by and through undersigned counsel, hereby serve their Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents.

**DOCUMENT REQUESTS**

**REQUEST NO. 1:** All documents and communications concerning S.B. 1165 or Ariz.

Rev. Stat. § 15-120.02, including without limitation documents and communications concerning its enactment, legislative history, the governmental interests that are allegedly advanced by S.B. 1165 or Ariz. Rev. Stat. § 15-120.02, its development, interpretation, and implementation, any complaints, concerns, emails, and texts regarding the impact of S.B. 1165, Ariz. Rev. Stat. § 15-120.02, and any other legislation that was considered regarding the participation of transgender athletes in Arizona.

**RESPONSE TO REQUEST NO. 1:**  The Legislative Leaders object to the extent this request seeks documents protected by the legislative privilege.  *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011).  The Legislative Leaders further object to the extent this request seeks documents protected by the deliberative process privilege.  *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008).  The Legislative Leaders further object to the extent this request seeks documents protected by the attorney-client privilege and/or the work product privilege.  The Legislative Leaders further object because the legislative history for S.B. 1165 is public information and Plaintiffs thus have more convenient, less burdensome, and less expensive access to this information than reproducing it here.  The Legislative Leaders further object to this request's relevant time period, which according to Instruction #8 is January 1, 2015 to the date of the response, as outside the scope permitted by Rule 26(b)(1) because documents from legislative sessions in which S.B. 1165 did not pass is not relevant to any party's claim or defense and is not proportional to the needs of the case.  The Legislative Leaders further object to this request because "any other legislation that was considered" is outside the scope permitted by Rule 26(b)(1) since legislation other than S.B. 1165 is not relevant to any party's claim or defense, and in addition is vague and ambiguous about what is "legislation that was considered."

Subject to and without waiving these objections, the Legislative Leaders are producing relevant, non-privileged documents from July 1, 2021 to March 30, 2022, which encompasses the entire interim session prior to the Fifty-fifth Legislature – Second Regular

1    Session until the day the Arizona Governor signed S.B. 1165.

2    **SUPPLEMENTAL RESPONSE TO REQUEST NO. 1:**  Subject to and without waiving

3    all objections previously asserted, the Legislative Leaders are producing responsive, non-

4    privileged documents from August 19, 2019 to present.

5

6    **REQUEST NO. 2:**    Without    time    limitation,    all    documents,    policies,

7    and communications concerning the participation of transgender students in any school

8    sports at any level in Arizona, including without limitation communications between you

9    and any school district; complaints or concerns you have received; and briefing materials

10   provided to you.

11   **RESPONSE TO REQUEST NO. 2:**  The Legislative Leaders object to the extent this

12   request seeks documents protected by the legislative privilege, such as "briefing materials."

13   *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*,

14   643 F.3d 278, 290 (9th Cir. 2011).  The Legislative Leaders further object to the extent this

15   request seeks documents like "briefing materials" protected by the deliberative process

16   privilege.  *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099-GEB-CMK, 2008 WL

17   2523550, at *5 (E.D. Cal. June 19, 2008).  The Legislative Leaders further object to the

18   extent this request seeks documents protected by the attorney-client privilege and/or the

19   work product privilege.  The Legislative Leaders further object to this request's lack of

20   time limitation as outside the scope permitted by Rule 26(b)(1) because documents from

21   legislative sessions in which S.B. 1165 did not pass is not relevant to any party's claim or

22   defense and is not proportional to the needs of the case.

23        Subject to and without waiving these objections, the Legislative Leaders are

24   producing relevant, non-privileged documents from July 1, 2021 to March 30, 2022, which

25   encompasses the entire interim session prior to the Fifty-fifth Legislature – Second Regular

26   Session until the day the Arizona Governor signed S.B. 1165.

27   **SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:**  Subject to and without waiving

28   all objections previously asserted, the Legislative Leaders are producing responsive, non-

1  privileged documents from August 19, 2019 to present.

2

3  **REQUEST NO. 3:** All documents and communications concerning Plaintiffs or this

4  action.

5  **RESPONSE TO REQUEST NO. 3:**  The Legislative Leaders object to the extent this

6  request seeks documents for "this action" protected by the legislative privilege.  *See, e.g.*,

7  *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d

8  278, 290 (9th Cir. 2011).  The Legislative Leaders further object to the extent this request

9  seeks documents for "this action" protected by the deliberative process privilege.  *Fabbrini*

10  *v. City of Dunsmuir*, No. CIVS07-1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal.

11  June 19, 2008).  The Legislative Leaders further object to the extent this request seeks

12  documents protected by the attorney-client privilege and/or the work product privilege.

13  The Legislative Leaders further object to this request's relevant time period, which

14  according to Instruction #8 is January 1, 2015 to the date of the response, as outside the

15  scope permitted by Rule 26(b)(1) because documents from legislative sessions in which

16  S.B. 1165 did not pass is not relevant to any party's claim or defense and is not proportional

17  to the needs of the case.

18         Subject to and without waiving these objections, the Legislative Leaders are

19  producing relevant, non-privileged documents from July 1, 2021 to March 30, 2022, which

20  encompasses the entire interim session prior to the Fifty-fifth Legislature – Second Regular

21  Session until the day the Arizona Governor signed S.B. 1165.

22  **SUPPLEMENTAL RESPONSE TO REQUEST NO. 3:** Subject to and without waiving

23  all objections previously asserted, the Legislative Leaders are producing responsive, non-

24  privileged documents from August 19, 2019 to present.

25

26  **REQUEST NO. 4:** All documents and communications you contend support your

27  assertion that banning transgender girls from competing in girls-only school sports

28  remedies past discrimination and provides equal opportunities for women and safety to

Add. 43 [4]

women athletes. *See* Intervenor-Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction at 5, 13.

**RESPONSE TO REQUEST NO. 4:**   The Legislative Leaders further object that this request for "all documents and communications" is outside the scope permitted by Rule 26(b)(1) because it is not proportional to the needs of the case and Plaintiffs have more convenient, less burdensome, and less expensive access to these documents than reproducing them here.  The Legislative Leaders and Defendant Horne have filed and cited hundreds of pages of expert declarations, studies, and other evidence that are too voluminous to reproduce here.   The burden of reproducing the requested documents outweighs its likely benefit.   The Legislative Leaders further object to the extent this request seeks premature disclosure of expert reports, which the Legislative Leaders will produce in accordance with the Court's Scheduling Order.  The Legislative Leaders further object to the definition of "you" to the extent it encompasses other legislators and staff of the Arizona Senate and House of Representatives who are not parties to this lawsuit.

Subject to and without waiving these objections, the Legislative Leaders identify and incorporate by reference the following documents and the documents cited within these documents:

- Facts and studies cited in S.B. 1165 § 2.
- Doc. 82-1 – Declaration of Dr. Gregory A. Brown, Ph.D., FACSM, in support of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 82-2 – Declaration of James M. Cantor, Ph.D., in Support of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 82-3 – Declaration of Dr. Chad Thomas Carlson, M.D., FACSM in Support of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 87-1 – Rebuttal Declaration of Dr. Gregory A. Brown, Ph.D., FACSM in Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for

Add. 44   5

a Preliminary Injunction.

- Doc. 87-2 – Rebuttal Declaration of James M. Cantor, Ph.D., in Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 87-3 – Supplemental Declaration of Dr. Chad Carlson, M.D., FACSM in Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 87-4 to Doc. 87-31 – Exhibits 7-34 filed by Intervenor-Defendants for the preliminary injunction hearing.
- Doc. 92-8 – Expert witness statement of Emma Hilton, PhD.
- Doc. 92-9 – Declaration of Dr. Linda Blade, Ph.D., in Support of Defendant Horne's Response to Plaintiffs' Motion for Preliminary Injunction.
- Doc. 92-10 to Doc. 92-37 – Exhibits 6-33 filed by Defendant Horne for the preliminary injunction hearing.
- Documents produced in response to Plaintiffs' First Set of Requests for Production of Documents to Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma.

Intervenor-Defendants will supplement this response if additional responsive, non-privileged documents are located.

**REQUEST NO. 5:** All documents, policies, and communications concerning sex-based separation in school sports in Arizona.

**RESPONSE TO REQUEST NO. 5:** The Legislative Leaders object to the extent this request seeks documents protected by the legislative privilege. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011). The Legislative Leaders further object to the extent this request seeks documents protected by the deliberative process privilege. *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008). The Legislative

Leaders further object to the extent this request seeks documents protected by the attorney-client privilege and/or the work product privilege.  The Legislative Leaders further object to this request's relevant time period, which according to Instruction #8 is January 1, 2015 to the date of the response, as outside the scope permitted by Rule 26(b)(1) because documents from legislative sessions in which S.B. 1165 did not pass is not relevant to any party's claim or defense and is not proportional to the needs of the case.

Subject to and without waiving these objections, the Legislative Leaders are producing relevant, non-privileged documents from July 1, 2021 to March 30, 2022, which encompasses the entire interim session prior to the Fifty-fifth Legislature – Second Regular Session until the day the Arizona Governor signed S.B. 1165.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 5:**  Subject to and without waiving all objections previously asserted, the Legislative Leaders are producing responsive, non-privileged documents from August 19, 2019 to present.

**REQUEST NO. 6:** Without time limitation, all documents and communications, including without limitation data, reports, research, and/or studies, concerning any impact the participation of transgender students in interscholastic and/or intramural sports has or had on non-transgender students, including without limitation: (a) the opportunities for non-transgender students to participate in interscholastic and/or intramural sports and to advance in their respective interscholastic and/or intramural sports, including by obtaining college scholarships; (b) the fairness or preservation of girls' sports; and (c) the safety of non-transgender girls who participate in interscholastic and/or intramural sports, including any injuries incurred as a result of the participation of transgender students on sports teams.

**RESPONSE TO REQUEST NO. 6:**  The Legislative Leaders object to the extent this request seeks documents protected by the legislative privilege.  *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011).  The Legislative Leaders further object to the extent this request seeks documents protected by the deliberative process privilege.  *Fabbrini v. City of Dunsmuir*, No. CIVS07-

Add. 46  7

1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008). The Legislative Leaders further object to the extent this request seeks documents protected by the attorney-client privilege and/or the work product privilege. The Legislative Leaders further object that this request for "all documents and communications" is outside the scope permitted by Rule 26(b)(1) because it is not proportional to the needs of the case and Plaintiffs have more convenient, less burdensome, and less expensive access to these documents than reproducing them here. The Legislative Leaders and Defendant Horne have filed and cited hundreds of pages of expert declarations, studies, and other evidence that are too voluminous to reproduce here. The burden of reproducing the requested documents outweighs its likely benefit. The Legislative Leaders further object to the extent this request seeks premature disclosure of expert reports, which the Legislative Leaders will produce in accordance with the Court's Scheduling Order.

Subject to and without waiving these objections, the Legislative Leaders identify and incorporate by reference the following documents and the documents cited within these documents:

- Facts and studies cited in S.B. 1165 § 2.
- Doc. 82-1 – Declaration of Dr. Gregory A. Brown, Ph.D., FACSM, in support of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 82-2 – Declaration of James M. Cantor, Ph.D., in Support of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 82-3 – Declaration of Dr. Chad Thomas Carlson, M.D., FACSM in Support of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 87-1 – Rebuttal Declaration of Dr. Gregory A. Brown, Ph.D., FACSM in Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction.
- Doc. 87-2 – Rebuttal Declaration of James M. Cantor, Ph.D., in Further Support

of Intervenor-Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction.

- Doc. 87-3 – Supplemental Declaration of Dr. Chad Carlson, M.D., FACSM in Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction.

- Doc. 87-4 to Doc. 87-31 – Exhibits 7-34 filed by Intervenor-Defendants for the preliminary injunction hearing.

- Doc. 92-8 – Expert witness statement of Emma Hilton, PhD.

- Doc. 92-9 – Declaration of Dr. Linda Blade, Ph.D., in Support of Defendant Horne's Response to Plaintiffs' Motion for Preliminary Injunction.

- Doc. 92-10 to Doc. 92-37 – Exhibits 6-33 filed by Defendant Horne for the preliminary injunction hearing.

- Documents produced in response to Plaintiffs' First Set of Requests for Production of Documents to Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma.

Intervenor-Defendants will supplement this response if additional responsive, non-privileged documents are located.

**REQUEST NO. 7:** All documents from or exchanged between, and communications with, any representative of any advocacy organization, including without limitation the Alliance Defending Freedom, the Heritage Foundation, Eagle Forum, and the Family Research Council concerning the participation of transgender students in interscholastic and/or intramural sports in Arizona.

**RESPONSE TO REQUEST NO. 7:** The Legislative Leaders object to the extent this request seeks documents protected by the legislative privilege. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011). The Legislative Leaders further object to the extent this request seeks documents protected by the deliberative process privilege. *Fabbrini v. City of Dunsmuir*, No. CIVS07-

1  1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008).  The Legislative

2  Leaders further object to the extent this request seeks documents protected by the attorney-

3  client privilege and/or the work product privilege.  The Legislative Leaders further object

4  to this request's relevant time period, which according to Instruction #8 is January 1, 2015

5  to the date of the response, as outside the scope permitted by Rule 26(b)(1) because

6  documents from legislative sessions in which S.B. 1165 did not pass is not relevant to any

7  party's claim or defense and is not proportional to the needs of the case.

8      Subject to and without waiving these objections, the Legislative Leaders are

9  producing relevant, non-privileged documents from July 1, 2021 to March 30, 2022, which

10  encompasses the entire interim session prior to the Fifty-fifth Legislature – Second Regular

11  Session until the day the Arizona Governor signed S.B. 1165.

12  **SUPPLEMENTAL RESPONSE TO REQUEST NO. 7:**  Subject to and without waiving

13  all objections previously asserted, the Legislative Leaders are producing responsive, non-

14  privileged documents from August 19, 2019 to present.

15

16  **REQUEST NO. 8:** For each of the governmental interests you identified in response to

17  Interrogatory No. 6, produce all documents and communications that support each

18  interest.

19  **RESPONSE TO REQUEST NO. 8:**  The Legislative Leaders object to the extent this

20  request seeks documents protected by the legislative privilege.  *See, e.g.*, *Lee v. City of Los*

21  *Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir.

22  2011).  The Legislative Leaders further object to the extent this request seeks documents

23  protected by the deliberative process privilege.  *Fabbrini v. City of Dunsmuir*, No. CIVS07-

24  1099-GEB-CMK, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008).  The Legislative

25  Leaders further object to the extent this request seeks documents protected by the attorney-

26  client privilege and/or the work product privilege.  The Legislative Leaders further object

27  that this request for "all documents and communications" is outside the scope permitted by

28  Rule 26(b)(1) because it is not proportional to the needs of the case and Plaintiffs have

1   more convenient, less burdensome, and less expensive access to these documents than
2   reproducing them here.  The Legislative Leaders and Defendant Horne have filed and cited
3   hundreds of pages of expert declarations, studies, and other evidence that are too
4   voluminous to reproduce here.  The burden of reproducing the requested documents
5   outweighs its likely benefit.  The Legislative Leaders further object to the extent this
6   request seeks premature disclosure of expert reports, which the Legislative Leaders will
7   produce in accordance with the Court's Scheduling Order.

8        Subject to and without waiving these objections, the Legislative Leaders identify
9   and incorporate by reference the following documents and the documents cited within these
10  documents:

11  - Facts and studies cited in S.B. 1165 § 2.
12  - Doc. 82-1 – Declaration of Dr. Gregory A. Brown, Ph.D., FACSM, in support
13    of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary
14    Injunction.
15  - Doc. 82-2 – Declaration of James M. Cantor, Ph.D., in Support of [Intervenors'
16    Proposed] Opposition to Plaintiffs' Motion for a Preliminary Injunction.
17  - Doc. 82-3 – Declaration of Dr. Chad Thomas Carlson, M.D., FACSM in Support
18    of [Intervenors' Proposed] Opposition to Plaintiffs' Motion for a Preliminary
19    Injunction.
20  - Doc. 87-1 – Rebuttal Declaration of Dr. Gregory A. Brown, Ph.D., FACSM in
21    Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for
22    a Preliminary Injunction.
23  - Doc. 87-2 – Rebuttal Declaration of James M. Cantor, Ph.D., in Further Support
24    of Intervenor-Defendants' Opposition to Plaintiffs' Motion for a Preliminary
25    Injunction.
26  - Doc. 87-3 – Supplemental Declaration of Dr. Chad Carlson, M.D., FACSM in
27    Further Support of Intervenor-Defendants' Opposition to Plaintiffs' Motion for
28    a Preliminary Injunction.

- Doc. 87-4 to Doc. 87-31 – Exhibits 7-34 filed by Intervenor-Defendants for the preliminary injunction hearing.
- Doc. 92-8 – Expert witness statement of Emma Hilton, PhD.
- Doc. 92-9 – Declaration of Dr. Linda Blade, Ph.D., in Support of Defendant Horne's Response to Plaintiffs' Motion for Preliminary Injunction.
- Doc. 92-10 to Doc. 92-37 – Exhibits 6-33 filed by Defendant Horne for the preliminary injunction hearing.
- Documents produced in response to Plaintiffs' First Set of Requests for Production of Documents to Intervenor-Defendants President Warren Peterson [*sic*] and Speaker Ben Toma.

Intervenor-Defendants will supplement this response if additional responsive, non-privileged documents are located.

**REQUEST NO. 9:** All documents used by you or relied on by you in preparing your Motion to Dismiss, Opposition to Plaintiffs' Motion for a Preliminary Injunction, responses to Plaintiffs' First Set of Interrogatories, and your responses to these Requests for Production.

**RESPONSE TO REQUEST NO. 9:** The Legislative Leaders object that this request seeks attorney work product and mental impressions. *See, e.g.*, *Becker v. TIG Ins. Co.*, No. 3:21-CV-05185-JHC, 2022 WL 13925733, at *1 (W.D. Wash. Oct. 24, 2022) (citing cases). The Legislative Leaders further object that this request is outside the scope permitted by Rule 26(b)(1) because it is not relevant to any party's claim or defense.

Dated: March 7, 2024                    Respectfully submitted,

                                        JAMES OTIS LAW GROUP, LLC

                                        */s/ Justin D. Smith*
                                        D. John Sauer, Mo. Bar No. 58721*

1

2  Justin D. Smith, Mo. Bar No. 63253*
   13321 North Outer Forty Road, Suite 300
3  St. Louis, Missouri 63017
   (816) 678-2103
4  Justin.Smith@james-otis.com
   * pro hac vice
5

6  *Attorneys for Intervenor-Defendants*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Justin Smith**

| | |
|---|---|
| **From:** | Colin Proksel   cproksel@omlaw.com |
| **Sent:** | ednesday, February 7, 2024  :59 PM |
| **To:** | diw@wb-law.com ; mckayw@wb-law.com ; Maria.Syms@azed.gov ; dpotts@jshfirm.com ; adaltrey@jshfirm.com ; lasmith@dmyl.com ; kristian.nelson@lewisbrisbois.com ; jellel@tuhsd.k12.az.us ; John Sauer; Justin Smith |
| **Cc:** | jhamid@debevoise.com ; jrassi@debevoise.com ; azimmerman@debevoise.com ; awhelan@nclrights.org ; rberg@nclrights.org |
| **Subject:** | Doe v. Horne -    ritten Discovery Re  uests to Defendants Horne,  l , and Intervenors |
| **Attachments:** | 2024-02-07 Doe v Horne - Third Set of RO  s to  l .pdf; 2024-02-07 Doe v Horne - First Set of RF  s to Horne.pdf; 2024-02-07 Doe v Horne - First Set of RF  s to Intervenors.pdf; 2024-02-07 Doe v Horne - Second Set of RF  s to  l .pdf; 2024-02-07 Doe v Horne - Second Set of RFPs to  l .pdf |

All,

Please see the attached.

Best,

Colin Proksel

**Colin M. Proksel**
602-640-9393 (direct)

---

**OSBORN**
**MALEDON**

2929 N. Central Ave, Ste. 2000
Phoenix, AZ 85012
**omlaw.com**

1  Colin Proksel (034133)
2  OSBORN MALEDON, P.A.
   2929 North Central Avenue, 21st Floor
3  Phoenix, Arizona 85012-2793
   State Bar No. 034133
4  Telephone:    (602) 640-9000
5  Facsimile:    (602) 640-9050
   Email:        cproksel@omlaw.com
6  *Attorney for Plaintiffs*
   *Additional counsel listed in signature block*
7

8              **UNITED STATES DISTRICT COURT**
               **FOR THE DISTRICT OF ARIZONA**
9                      **TUCSON DIVISION**

10 | Jane Doe, by her next friend and parents | Case No. 4:23-cv-00185-JGZ |
   | Helen Doe and James Doe; and Megan Roe, | |
11 | by her next friend and parents, Kate Roe and | **PLAINTIFFS' INITIAL RULE 26(a)(1)** |
   | Robert Roe, | **DISCLOSURES** |
12 | | |
   |              Plaintiffs, | |
13 |       v. | |
14 | Thomas C. Horne, in his official capacity as | |
15 | State Superintendent of Public Instruction; | |
   | Laura Toenjes, in her official capacity as | |
16 | Superintendent of the Kyrene School | |
   | District; Kyrene School District; The | |
17 | Gregory School; and Arizona Interscholastic | |
   | Association Inc., | |
18 | | |
19 |              Defendants. | |

20
21
22
23
24
25
26
27
28

Add. 54

1    Plaintiffs Jane Doe, by her next friends and parents Helen Doe and James Doe, and

2    Megan Roe, by her next friends and parents Kate Roe and Robert Roe (collectively,

3    "Plaintiffs"), by and through their undersigned counsel, and pursuant to Federal Rule of

4    Civil Procedure 26(a)(1), hereby submit the following Initial Disclosures ("Disclosures").

5    These disclosures are based on the information reasonably available to Plaintiffs as

6    of this date and represent a good faith effort by Plaintiffs to identify discoverable

7    information that they reasonably believe may be used to support their claims or defenses,

8    as required. These disclosures are made without waiving: (1) any claim of privilege or

9    work product; (2) the right to object on the grounds of competency, relevancy and

10   materiality, hearsay, or any other proper ground, to the use of any such information, for

11   any purpose, in whole or in part, in any subsequent proceeding in this action or any other

12   action; and (3) the right to object to any and all grounds, at any time, to any other discovery

13   request or proceeding involving or relating to the subject matter of these Disclosures.

14   Plaintiffs expressly reserve the right to supplement or modify these Disclosures as

15   additional information becomes available. These Disclosures do not include information

16   that may be used solely for impeachment purposes, or identify or otherwise include

17   information concerning experts, as this subject is not covered by Fed. R. Civ. P. 26(a)(1).

18   Plaintiffs will provide their expert disclosures, if applicable, pursuant to Fed. R. Civ. P.

19   26(a)(2) and the case management order.

20   1.    Witnesses (the name, and if known, the address and telephone number of the

21   individual likely to have discoverable information—along with the subjects of the

22   information—that the disclosing party may use to support its claims or defenses, unless

23   solely for impeachment).

24   ///

25   ///

26   ///

27   ///

28   ///

| Name | Contact Information | Subject(s) of Information |
|------|---------------------|---------------------------|
| Jane Doe | Through counsel | That she is a girl who is transgender and has gender dysphoria; that she wishes to compete in and experience the benefits of school sports like other girls; that the ban is stigmatizing, isolating, humiliating, and deprives her of the well-known physical, mental, emotional, and developmental benefits of sports. |
| Helen Doe | Through counsel | That her daughter is a girl who is transgender and has gender dysphoria; that her daughter wishes to compete in and experience the benefits of school sports like other girls; that the ban is stigmatizing, isolating, and humiliating to her child and to their family, and deprives her child of the well-known physical, mental, emotional, and developmental benefits of sports. |
| James Doe | Through counsel | That his daughter is a girl who is transgender and has gender dysphoria; that his daughter wishes to compete in and experience the benefits of school sports like other girls; that the ban is stigmatizing, isolating, and humiliating to his child and to their family, and deprives his child of the well-known physical, mental, emotional, and developmental benefits of sports. |
| Megan Roe | Through counsel | That she is a girl who is transgender and has gender dysphoria; that she wishes to compete in and experience the benefits of school sports like other girls; that the ban is stigmatizing, isolating, humiliating, and deprives her of the well-known physical, mental, emotional, and developmental benefits of sports. |

| Kate Roe | Through counsel | That her daughter is a girl who is transgender and has gender dysphoria; that her daughter wishes to compete in and experience the benefits of school sports like other girls; that the ban is stigmatizing, isolating, and humiliating to her child and to their family, and deprives her child of the well-known physical, mental, emotional, and developmental benefits of sports. |
| Robert Roe | Through counsel | That his daughter is a girl who is transgender and has gender dysphoria; that his daughter wishes to compete in and experience the benefits of school sports like other girls; that the ban is stigmatizing, isolating, and humiliating to his child and to their family, and deprives his child of the well-known physical, mental, emotional, and developmental benefits of sports. |
| Representatives of the Arizona Interscholastic Association | Through defense counsel | Information related to defendants' defenses; information related to AIA policies prior to Ariz. Rev. Stat. § 15-120.02. |
| Dr. Julie Sherrill, Head of School at The Gregory School | Through defense counsel | Information related to defenses. |

Plaintiffs also include other current and former employees and staff of the Arizona Department of Education ("ADOE") and the Arizona State Legislature not yet known to Plaintiffs. Plaintiffs further incorporate the witnesses identified by Defendants or any other party in this matter, whether those witnesses are later withdrawn or de-designated. Plaintiffs also include any custodians of records or other witnesses necessary to provide the required foundation for any exhibits, documents, or other materials.

Plaintiffs reserve the right to seek discovery from, and relating to, other persons that may subsequently become known as persons likely to have discoverable information.

Plaintiffs further reserve the right to designate or call further witnesses at trial, including for purposes of rebuttal or impeachment. If any persons not included herein are identified in any further discovery responses by either party or are deposed in this case, Plaintiffs hereby incorporate those persons as individuals likely to have discoverable information that Plaintiffs may use to support their claims or defenses.

2.      Documents (A copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the disclosing party that the disclosing party may use to support its claims or defenses, unless solely for impeachment).

Without waiving any objections or claims of privilege or work product or stipulating to the relevancy of any materials; and expressly reserving their right to supplement, Plaintiffs identify the following hardcopy or electronic records in their possession, custody, or control:

i)      All pleadings in this matter and attachments thereto;

ii)     All discovery, documents, communications, or other information that is produced, served, exchanged, or filed in this matter;

iii)    All depositions taken in this matter and exhibits thereto.

Plaintiffs incorporate those documents identified by Defendants or any other party in this matter and reserve their right to supplement this list during discovery.

3.      Damages (A computation of any category or damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered).

Plaintiffs seek injunctive and declaratory relief and any other relief the Court deems proper. Plaintiffs do not seek monetary damages.

4.      Insurance Agreements (For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be

1   liable to satisfy part or all of a judgment which may be entered in the action or to indemnify

2   or reimburse for payments made to satisfy the judgment).

3       Plaintiffs are not subject to, or aware of, any applicable insurance agreements.

4

5                            Dated: September 29, 2023

6                            /s/ Colin M. Proksel

7                            Colin M. Proksel (034133)
OSBORN MALEDON, P.A.

8                            2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793

9                            Telephone: (602) 640-9000
Facsimile: (602) 640-9050

10                          Email: cproksel@omlaw.com

11                          Jyotin Hamid*
Justin R. Rassi*

12                          Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP

13                          66 Hudson Boulevard
New York, New York 10001

14                          Telephone: (212) 909-6000
Facsimile: (212) 909-6836

15                          Email: jhamid@debevoise.com
Email: jrassi@debevoise.com

16                          Email: azimmerman@debevoise.com

17                          Amy Whelan*
Rachel Berg*

18                          NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370

19                          San Francisco, California 94102
Telephone: (415) 343-7679

20                          Facsimile: (415) 392-8442
Email: awhelan@nclrights.org

21                          Email: rberg@nclrights.org

22                          *Admitted pro hac vice.

23

24

25

26

27

28

**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Doe, et al., | No. CV-23-00185-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Thomas C Horne, et al., | |
| Defendants. | |

On June 20, 2024, this Court granted Plaintiffs' Motion to Compel Discovery and ordered Intervenor-Defendants to produce certain documents and sit for depositions. (Doc. 211.) On June 21, 2024, Intervenor-Defendants filed a Motion for Stay Pending Appeal stating their intention to seek a Writ of Mandamus from the Ninth Circuit Court of Appeals. (Doc. 212.) If their Motion for Stay is denied, Intervenor-Defendants request this Court grant a 21-day administrative stay to allow time for the Ninth Circuit to consider a motion for stay and request for administrative stay. (*Id.*) Plaintiffs oppose the Motion. (Doc. 214.) For the following reasons, the Court will deny Intervenor-Defendants' Motion for Stay Pending Appeal and Request for Administrative Stay.

Mandamus is a "drastic" remedy reserved for "extraordinary situations." *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654 (9th Cir. 1977). A petitioner must demonstrate that the "right to issuance of the writ is clear and indisputable." *Bozic v. U.S. Dist. Ct. (In re Bozic)*, 888 F.3d 1048, 1052 (9th Cir. 2018). The Ninth Circuit considers five factors when examining a petition for issuance of a writ of mandamus: whether (1) Petitioners have "no

1    other adequate means, such as a direct appeal, to attain the relief ... desire[d]"; (2)

2    Petitioners "will be damaged or prejudiced in a way not correctable on appeal"; (3) the

3    "district court's order is clearly erroneous as a matter of law"; (4) the "order is an oft-

4    repeated error, or manifests a persistent disregard of the federal rules"; and (5) the "order

5    raises new and important problems, or issues of law of first impression." *Bauman*, 557 F.2d

6    at 654-55. The absence of factor three will always defeat a petition for mandamus. *Sussex*

7    *v. U.S. Dist. Ct. (In re Sussex),* 781 F.3d 1065, 1071 (9th Cir. 2015).

8        When considering whether to grant a stay pending appeal, "a court considers four

9    factors: (1) whether the stay applicant has made a strong showing that he is likely to

10   succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

11   (3) whether issuance of the stay will substantially injure the other parties interested in the

12   proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426

13   (2009) (internal quotation omitted). "[A] movant's failure to satisfy the stringent standard

14   for demonstrating a substantial likelihood of success on the merits is an arguably fatal flaw

15   for a stay application." *M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020).

16       The Intervenor-Defendants have not made a substantial showing that they are likely

17   to succeed on a request for the extraordinary relief of mandamus. In granting Plaintiffs'

18   Motion to Compel, the Court concluded that: (1) the Intervenor-Defendants waived their

19   legislative privilege by intervening in this litigation and putting their motives at issue, and

20   (2) the *Morgan* Doctrine, which protects high ranking government officials from being

21   unduly entangled in civil litigation, does not apply to prevent Intervenor-Defendants from

22   being deposed where they voluntarily intervened. (*See* Doc. 211.) The Intervenor-

23   Defendants disagree, re-urging the arguments presented in their Objection to Plaintiffs'

24   Motion to Compel. (*See* Docs. 198, 212.) These arguments have been addressed by the

25   Court and found to be without merit.

26       Intervenor-Defendants are unlikely to succeed on their claim that Legislative

27   Privilege shields Intervenor-Defendants from producing certain documents and being

28   deposed. As Intervenor-Defendants acknowledge, (Doc. 212 at 3 nt. 1)*,* in a similar case

- 2 -

1  brought by the same Intervenor-Defendants, the Ninth Circuit ultimately concluded that
2  the district court did not clearly err in determining that the legislators waived their
3  legislative privilege by intervening in the action. *See In re Toma*, 2023 WL 8167206, at *1
4  (9th Cir. Nov. 24, 2023) (unpublished) (reasoning that the district court could not clearly
5  err where no Ninth Circuit authority prohibited the course taken by the district court).

6        Intervenor-Defendants are unlikely to succeed on their claim that the *Morgan*
7  *Doctrine* shields Intervenor-Defendants from being deposed. The *Morgan* doctrine serves
8  to protect high ranking officials from being "unduly entangled" in civil litigation. *In re*
9  *Gold King Mine Release in San Juan Cnty*., 2021 WL 3207351, at *2 (D.N.M. Mar. 20,
10  2021). The underlying rationale of protecting high ranking officials from being forced to
11  participate in litigation is not applicable where the high ranking officials request to and
12  voluntarily insert themselves as a party to a litigation and actively request discovery from
13  other parties. Though Intervenor-Defendants argue that intervention does not affect the
14  *Morgan* doctrine's application, they cite no relevant caselaw that would suggest this Court
15  clearly erred in reaching its conclusion. *See In re U.S. Dep't of Educ.,* 25 F.4th 692, 698
16  (9th Cir. 2022) ("[T]he district court has erred when [the Ninth Circuit] has already directly
17  addressed the question at issue or when similar cases from [the Ninth Circuit], cases from
18  the Supreme Court, cases from other circuits, the Constitution, or statutory language
19  definitively show us that a mistake has been committed."). Accordingly,

20        **IT IS ORDERED** that Intervenor-Defendant's Motion for Stay Pending Appeal
21  and Request for Administrative Stay (Doc. 212) is **denied**.

22        Dated this 12th day of July, 2024.

23
24
25  Jennifer G. Zipps
26  United States District Judge
27
28

- 3 -